**PALNO v. UNITED STATES.**

No. 9325.

Circuit Court of Appeals, Eighth Circuit.

April 16, 1932.

112

Frank D. Rader, John N. Swenson, and Charles S. Walden, all of Kansas City, Mo., for appellant.

William L. Vandeventer, U. S. Atty., and A. B. Lovan, Asst. U. S. Atty., both of Kansas City, Mo., for the United States.

Before STONE, KENYON, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

The appellant and Mrs. Sadie Bielsker were charged in an indictment of four counts with (1) the possession of certain distilling apparatus suitable for the distillation of alcoholic spirits, in violation of the Internal Revenue Act (26 USCA § 281); (2) the manufacture of whisky, in violation of the National Prohibition Act, tit. 2, § 3 (27 USCA § 12); (3) the making, possessing, and fermenting of mash fit for distillation and the production of alcoholic spirits, in violation of the Internal Revenue Act (26 USCA § 307); and (4) the possession of whisky, in violation of the National Prohibition Act, tit. 2, § 3 (27 USCA § 12). Sadie Bielsker was acquitted by the jury, but appellant was found guilty on all four counts of the indictment and was sentenced to the United States Penitentiary at Leavenworth, Kan., for a period of three years on the first, second, and third counts, the sentences to run concurrently, and to pay a fine of $500 on the fourth count.

From this judgment and sentence appellant has brought the case to this court, seeking reversal on the grounds: (1) The evidence is insufficient to sustain the verdict; (2) the charge of the court was argumentative and not judicial in nature; (3) the sentence was excessive, in that the maximum penalty under the first and third counts was two years.

At the close of all the testimony, appellant made a motion for a directed verdict as to each count, on the ground that the Government had failed to prove the essential elements necessary to sustain a verdict of guilty. The evidence submitted by the government tended to prove that on November 7, 1930, three prohibition agents drove to the vicinity of 2806 Park avenue, Kansas City, Mo., the premises described in the indictment, and in passing the premises detected the odor of mash. While stationed in the immediate vicinity of this place, they saw a Cadillac sedan automobile leaving the premises, driven by a man who was bareheaded, and who passed nearby where they were stationed, and the lights from the apartments in the vicinity and the street lights made it possible for them clearly to see his features, and they distinctly recognized the person as the appellant, Armando Palno. On the following day a search warrant was procured, and Sadie Bielsker was found on the first floor of the house, which was a duplex of two or two and a half stories. In the attic the searchers found a 200-gallon still in operation, 61 barrels of mash, and 60 gallons of whisky; they found a drip tank on the second floor, in which there were approximately

6 gallons of whisky. This drip tank was connected with the still on the third floor by a hose through the ceiling. The still at the time of the search was in full operation, and whisky was coming from the hose into the drip tank. Sadie Bielsker was then questioned by the officers, and she said that she had rented the upstairs to some men for $30 a month; that they had left a card and told her in case of any trouble or of men coming around that they would come out. She produced a card of the Cadillac Motor Company, on the back of which was written a telephone number, Harrison 1009, and the names "Sam or Tony." She offered to call the number and ask Sam or Tony to come out. One of the government agents then went with her to a drug store nearby, and dialed the telephone number Harrison 1009, and handed the receiver to Mrs. Bielsker, directing her to say that the still was leaking. When an answer came to this call she stated that there was trouble, and requested that the party come right out. She then returned to 2806 Park avenue with the government agent, and in about fifteen minutes appellant came to the door and rang the door bell. As Mrs. Bielsker opened the door, appellant said to her, "What is the matter," to which she answered, "Your still is leaking in the upstairs. I want you to go upstairs and fix it." He then said, "All right," and came into the house, closing the door behind him, and the officer then placed him under arrest.

Mrs. Bielsker, it may be said, in reporting that the still was leaking, both over the telephone and in the house, was acting under the direction, and probably under the coercion of the government agents, and this was simply a ruse employed by the government agents as a means of discovering the owner and operator of the still. At the time of appellant's arrest, one of the government agents asked Mrs. Bielsker, in the presence and hearing of appellant, "Is this the man that put the still on the second floor?" To this she answered, "This is one of them." He then asked her, "This is the man that paid you the rent?" to which she answered "Yes." This witness testified: "Just about that time (when Mrs. Bielsker was asked whether the appellant was the man who paid her the rent), why, Palno hollered out something and jumped at her and I set him back down in the chair. I asked her again the same questions and she again said 'yes.' And I asked her a third time and she said, 'yes.' This fellow here was sitting there all this time and never made another attempt."

Another witness, testifying with reference to this incident, said: "He (Agent Small) asked Mrs. Bielsker if this was one of the men who paid her the rent and she said it was. Agent Small immediately asked if this was one of the men who paid the rent and put the still in upstairs and she said, 'Yes,' and Palno screamed at her to shut up, not to say anything and say he was a visitor and rushed at her, and it frightened Mrs. Bielsker to such an extent that she was nearly in hysterics and was sobbing."

About this same time, Mrs. Bielsker said to appellant, "Well, why don't you do what you said you would do? These are officers. Why don't you pay them off like you said you would do?" Then she said to Agent Small, "You see now you have made him mad. Now he won't pay you anything."

There was further testimony as to the occurrences at the time of the arrest. One witness further testified: "She kept talking and became louder and louder, then she calmed down and the wagon was called and pulled up in front of Mrs. Bielsker's house. She followed me to the front door and said to Palno, 'What these officers want is money.' She said, 'Give them money. Give them money.' He said, 'Why, I don't know what you are talking about.'"

This testimony was corroborated by the testimony of several witnesses. Taken in connection with all the facts and circumstances, it was abundantly ample to convince the jury beyond a reasonable doubt, as it does us, that the appellant was guilty of the offenses charged in the indictment. But it is urged that the telephone communication was erroneously admitted in evidence, and that without such evidence the proven facts failed to sustain the charges against the appellant. However, the admission of the telephone conversation is not assigned as error, and it is to be observed that Mrs. Bielsker was produced as a witness for defendants, and she, without objection, on direct examination testified to this telephone conversation. This testimony was not limited to the defense of Mrs. Bielsker, but was offered on behalf of both defendants, and, if there was any error in admitting the telephone conversation in the first instance, it was certainly cured by the production of defendants' version of the same conversation in behalf of the defendants.

It is earnestly contended that the court, in its charge to the jury, departed from the legitimate bounds of commenting on the evidence, and entered the realm of partisan ar-

gument. It is perfectly proper that a trial judge should sum up the facts and express his opinion thereon. His comments should, of course, not be in the nature of an argument, but a fair dispassionate statement of what the evidence shows, both in behalf of the government and in behalf of the defendants. It is important that in doing so the trial judge should never depart from the role of an impartial judge, or assume the role of a partisan advocate. The evidence should be stated fairly, both that in behalf of the government, and that in behalf of the accused, and, in doing so, the trial judge must make it plain that the jurors are left free to exercise their independent judgment as to the facts. But as said by this court in Rudd v. United States, 173 F. 912, 914, "A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done." See, also, Weare v. United States (C. C. A.) 1 F.(2d) 617; Spalitto v. United States (C. C. A.) 39 F. (2d) 782.

As we read the record, the only question covered by a proper exception is as to the comment of the court in regard to the defendant Sadie Bielsker. This exception is as follows:

"We wish to except to that part, to the last part of the Court's charges wherein he expressed an opinion, and especially on behalf of the defendant Palno, as being unfair and argumentative, and as an advocate against the defendant Palno.

"The Court: Well, I expressed an opinion only as to the defendant Bielsker. I will be very glad to express one as to both defendants, if you wish it. Note the exception."

■ The portion of the charge challenged is as follows: "Gentlemen of the Jury, I have listened very carefully to the testimony in this case, as you have, because there are certain questions that it is necessary for the Court to pass upon in connection with every case, and I think I shall express an opinion as to one of the defendants, Sadie Bielsker. You may disregard it if you wish to do so. While I thought it was my duty to submit the case as to her to you, since there is evidence upon which a verdict might be based, and while I am personally convinced—that too is not binding upon you at all—while I am personally convinced she knew that still was being operated in the premises above, and while I don't believe that reasonable men can accept as true a great deal of her testimony before

you, it is so unreasonable, in my view of it— that is not binding upon you—nevertheless, gentlemen, I think there is quite a doubt, in my mind there is quite a doubt as to whether she is guilty of any one of the four charges which have been returned against her. Mere knowledge that a still is being operated does not constitute an offense against the law. My personal opinion as to her is that there is great doubt as to her guilt. That may not be your view, gentlemen, and if it isn't of course you can return a verdict in accordance with your own judgment and I will respect your verdict, whatever it is. But I think it is my duty to say to you I doubt whether she is guilty of these offenses which have been charged against her. She may have been guilty of conspiracy; she may have been guilty of knowledge of what was going on, and she may have been guilty of something even worse today in your presence, but of these charges against her I doubt her guilt. That is my view, not binding upon you at all, and not to be considered by you except as you may think it is helpful to you."

It will be observed that this instruction refers exclusively to the defendant Sadie Bielsker. But it is claimed by appellant that the evidence as to him was purely circumstantial, and that the testimony of Sadie Bielsker contradicted that of the government agents, and hence the quoted instruction placed Sadie Bielsker, one of appellant's witnesses, in an unfavorable light. It must be borne in mind that Sadie Bielsker was jointly indicted with the appellant, and they were being tried together. The apparent purpose of the remarks of the court was to guard the defendant Sadie Bielsker against a possible prejudice which might have been created in the minds of the jury because of the very nature of the facts and circumstances disclosed by the testimony. The court was of the view that this testimony, including the surrounding facts, rather conclusively showed that she was guilty of several criminal offenses, but doubted whether that testimony, damning as it was, proved her guilt of the particular charges contained in the indictment. It would unduly extend this opinion to set out even a résumé of her incredible testimony. Suffice it to say that it was directly in conflict in all material points with that of four government witnesses; it was in conflict with all the admitted surrounding facts and circumstances; it was contrary to all human probability. But, as said by the court to the jury, she was not on trial for conspiracy, nor for guilty knowledge of what was going on, nor, indeed, for perjury. Being in doubt as

to her guilt of the charges contained in the indictment, it was perfectly proper that the court should so advise the jury. Considering the instruction as an expression of opinion as to the credibility of the witness, it was not improper. The judge may not only express an opinion as to the guilt or innocence of the defendant, and as to the facts in issue, but he may express his opinion as to the credibility of witnesses, always clearly advising the jury that his expressed opinion is not binding upon them. Tuckerman v. United States (C. C. A.) 291 F. 958; Post v. United States (C. C. A.) 135 F. 1, 70 L. R. A. 989. We are convinced that the only effect of this comment of the court was to save the defendant Sadie Bielsker from conviction, and the discretion of the trial court was not abused.

■ It is finally urged that a reversal should be ordered because the court, in sentencing appellant to a term of three years under counts one and three, committed error; the maximum penalty under the law for said offenses being two years. It is observed, however, that the maximum penalty for the offense charged in the second count is five years. The sentences all run concurrently. Being within the maximum, which could lawfully have been imposed under count two, the error is not prejudicial. Dickerson v. United States (C. C. A.) 20 F.(2d) 901; United States v. Trenton Potteries Co., 273 U. S. 392, 47 S. Ct. 377, 71 L. Ed. 700, 50 A. L. R. 989; Brooks v. United States, 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407; Koth v. United States (C. C. A.) 16 F.(2d) 59; White v. United States (C. C. A.) 16 F.(2d) 870; Ghadiali v. United States (C. C. A.) 17 F.(2d) 236.

The judgment appealed from is therefore affirmed.