281 F.2d 429
 Ronnie J. EVERITT, William Dallas Stevens and George Rondel Kirkland, Appellants,
v.
UNITED STATES of America, Appellee.
Alfis O'Neal THOMPSON, Jr., Appellant,
v.
UNITED STATES of America, Appellee.
Dock Perry GLENN, Appellant,
v.
UNITED STATES of America, Appellee.
 No. 17893.
 No. 17876.
 No. 17875.
 United States Court of Appeals Fifth Circuit.
 August 8, 1960.
 Rehearing Denied in No. 17875 October 3, 1960.
 Rehearing Denied in No. 17893, November 1, 1960.
 
 COPYRIGHT MATERIAL OMITTED R. O. Vorbusch, New Orleans, La., for appellants.
 Wilfred C. Varn, U. S. Atty., F. E. Steinmeyer, III, Asst. U. S. Atty., Tallahassee, Fla., for appellee.
 Before HUTCHESON, JONES and WISDOM, Circuit Judges.
 HUTCHESON, Circuit Judge.
 
 
 1
 These appeals are from judgments on jury verdicts entered in cases tried separately, in the order set out above, and separately appealed. They are based on indictments[1] charging schemes of the same general nature, to defraud insurance companies by pretended claims that fictitious and feigned automobile wrecks, occurring at various times and places in 1955 and 1956, were real and bona fide, and that the mails and, in Everitt's case, interstate telephonic communications were used in the Northern District of Florida, to effect the schemes.
 
 
 2
 While not necessary for the decision of these appeals that we do so, we think that, because of the many indictments and defendants involved, the haste with which these cases now before us were tried, and the general resulting confusion, the following preliminary statement will serve a useful purpose in clarifying the situation and circumstances surrounding the litigation as a whole and particularly the series of cases involved in these appeals.
 
 
 3
 On September 19, 1958, with consent of the then counsel of the parties, the court consolidated and set for trial, for October 6, 1958, at Marianna, the cases against Belvin, et al., note 1, supra, and for the first day of the April, 1959 term at Marianna, Marianna Criminal No. 1342, Pensacola Criminal No. 5237 against Everitt and Stevens, and Tallahassee Criminal No. 2269 against Everitt, Stevens and Kirkland.
 
 
 4
 On October 6, 1958, the cases set for trial for that day were called and tried, except as to defendants Thompson and Glenn, who were not in custody and did not appear; and the Marianna indictments Nos. 1339, 1340 and 1341, as to Thompson, and No. 1341, as to Glenn, were severed and continued for trial as to them.
 
 
 5
 On January 6, 1959, Thompson and Glenn appeared with counsel, W. Fred Turner, and pleaded not guilty, and the cause was set for trial as to them for the second Monday in June.
 
 
 6
 During the April, 1959 term at Marianna, to which the cases had been adjourned for trial, Thompson, appearing without counsel and requesting appointment of counsel, moved for continuance and postponement and for sufficient further delay to prepare his case, for change of venue because of prejudice created by newspaper articles, and to quash a statement obtained from him.
 
 
 7
 The court, denying all motions for further time to prepare for trial and Thompson's other motions, appointed Mr. Urquhart as counsel for Kirkland, Everitt and Stevens, and Mr. Hays as counsel for Thompson, and denied Glenn's request for the assistance of counsel and Kirkland's motion to be tried separately in No. 2269.
 
 
 8
 On June 8, the court, pursuant to a plan, for an immediate disposition of all the cases, already determined upon, notified Thompson and Glenn to stand ready for trial immediately following the trial of Everitt, Stevens and Kirkland in the three cases, Marianna No. 1342, Pensacola No. 5237, and Tallahassee No. 2269, and these cases were then put to trial.
 
 
 9
 At 1:40 P.M. on June 9, the jury in these cases retired and at 2:10 P.M. returned a verdict of guilty[2] in Marianna Cr. No. 1342 and Tallahassee Cr. No. 2269, the district court having, on his own motion, dismissed Pensacola No. 5237.
 
 
 10
 On June 10th, when the next cases, Marianna Cr. Nos. 1339 and 1340 against Thompson alone and 1341 against Thompson and Glenn were called to be tried together, Glenn's motion for severance in Cr. No. 1341 was granted, and the trial of that case as to him alone was adjourned until June 11, 1959, at 9:30 A.M. The three cases against Thompson, Cr. Nos. 1339, 1340 and 1341, then went to trial. Submitted to the jury for its verdict at 9:24 on June 11, a verdict of guilty on all indictments was returned at 9:45.
 
 
 11
 Immediately thereafter Glenn's case was called for trial, and, a jury, eight of whose members had been on the jury in the Everitt case and had been complimented by the court upon their verdict and for returning it so promptly, was placed in the box. At 3:20 the same day, the evidence in and the arguments and charge concluded, the jury retired to consider its verdict, and at 3:52 returned a verdict of guilty.
 
 
 12
 Since, as will appear from our opinion in the three cases, each of them will have to be reversed for basic or fundamental procedural errors attending the trial, we will not undertake a discussion of the merits of the several cases further than to say, in agreement with the opinion in the Belvin case, 273 F.2d 583, 584, that we do not think the judgments in any of them should be reversed and rendered for failure of the evidence as matter of law to make out a case for submission to the jury. Since, too, it is most likely that on the retrial of these cases, none of the claimed errors will be repeated, we will not deal here with the many claims of error so vigorously urged in the brief of appellants' appointed counsel. Instead, in dealing with the appeals and giving our reasons for concluding that the judgments in them must be reversed, we will confine our opinion in each of the cases to stating, within the briefest compass, only those reasons for reversing the judgments which we regard as most compelling.
 
 
 13
 The Appeals of Everitt, Stevens and Kirkland.
 
 
 14
 While the court did, in the first week in June, appoint Mr. Urquhart counsel for Kirkland, as well as for Everitt and Stevens, Kirkland, before the case was called for trial on June 8, secured counsel of his own, a Mr. Duncan, and on June 8, when it was called for trial, Duncan filed a motion to sever the trial of the sole indictment in which Kirkland was charged from the trial of the three indictments with which the others were charged. That motion was denied, and Kirkland was compelled to go to trial under the great handicap of being confronted with other matters and transactions with which, though they were of the same general nature as the one he was charged with, he was neither charged nor otherwise connected. This action constituted prejudicial error which could not have been cured if, as the judge did not, he had instructed the jury not to consider against Kirkland any of the evidence offered on the other charges. Rules 8(b) and 13, Federal Rules of Criminal Procedure, 18 U.S.C.A. Cf. Griffin et al. v. United States, 5 Cir., 272 F.2d 801; 273 F.2d 958; and Schaffer v. United States, 5 Cir., 221 F.2d 17, 54 A.L.R.2d 820. In addition, the harmful effect was heightened and aggravated by the fact that the district judge did not at any time or in any way advise the jury that, in determining Kirkland's guilt, the proof of the other offenses could not be considered by them.
 
 
 15
 But this was not all that occurred to prevent Kirkland and his co-defendants from having a fair trial. Mr. Holmans, who testified as a government witness that he was a special agent for the Association of Casualty and Surety Companies and that he contacted Kirkland to obtain a statement from him, was permitted to testify in the presence of the jury that he took a statement and that he had in his hand the original copy of a five page typewritten statement signed and sworn to by Kirkland regarding the automobile accidents.
 
 
 16
 The district attorney then undertaking to offer the statement into evidence, counsel for Kirkland moved that a preliminary examination be conducted outside of the hearing of the jury to have the court determine whether or not the so-called statement was given freely and voluntarily, and, referring to a motion made earlier by Kirkland to exclude the use of the statement because taken from him under circumstances preventing its being a free and voluntary statement, he renewed that motion. The court, saying, "This is a good way to ease that pain, isn't it? Members of the jury go out a few minutes.", sent the jury out. Whereupon the examination of the witness was continued by Mr. Duncan.
 
 
 17
 In the course of this inquiry, the court took the witness over, and, when he had concluded his examination, defendant's counsel answering "Yes" to his query: "You want to object to its receipt in evidence on the ground that it was secured under duress?", the court said: "I will overrule that objection, but I would like to see that statement and see if we can't dig up a better ground on which to keep it out."
 
 
 18
 It was then that the court appointed attorney for the other defendants, Mr. Urquhart, spoke up for them and vigorously objected to the statement as highly prejudicial to them, and the following then occurred:
 
 
 19
 Mr. Duncan, before the evidence was finally admitted, asked to put his client on the stand, and the court said: "No, you can't do it that way. After the government closes its case, if you want to, you can put him on, but you can't put him on now. Counsel insisting that he wanted the court to hear the defendant's testimony for the court's determination whether the statement was free and voluntary or was induced by threats or promises, the court ruled that he would not hear the defendant and would let the statement go to the jury.
 
 
 20
 Mr. Urquhart then stating, "If this testimony goes in, even if the judge charges the jury not to consider it against the others, I feel this will convict these men and deprive them of due process", the court ruled that the statement would not be admitted into evidence because in its over-all effect it was too damaging to the other defendants, and, for that reason, it would not be fair to anybody to let it in. The government counsel then stated: "Your Honor, this statement is made by one of the defendants." and the court court replied: "That doesn't make any difference. I am not letting it in. You can go sit down. I am not going to let the defendant put on testimony that would start a side circus."
 
 
 21
 Mr. Steinmeyer, for the United States, then saying, "I would like to ask one question as to whether the defendant told the witness orally about his part in the wreck.", the court, at first protesting, "I am not going to permit any examination as to what Kirkland said about himself or these other defendants", and later saying, "This kind of leaves you in a hole, does it? Well you have submitted your case and all the testimony you have other than that one statement as to the guilt or innocence of all these defendants in these two wrecks.", he finally decided to allow the government to ask the witness the single question whether Kirkland admitted participation in the Valdosta wreck. The government stating, "I will agree to limit myself to one question.", the jury was then returned to the box, and the witness was asked whether, when he questioned the defendant, he admitted that he had participated in a faked, staged automobile wreck about ten miles west of Valdosta, and he answered that he did.
 
 
 22
 With that the government rested and so did the defendants, and the case was sent to the jury with no limiting instructions.
 
 
 23
 So serious in their implications and consequences, against all the defendants involved in this handling of the matter of Kirkland's purposed confession, were these errors that, if there were no other, the case would have to be reversed. But there were other errors equally serious and reversible. Summarizing them, they are:
 
 
 24
 First, the general way in which the case was tried with the judge in the position of a much speaking judge who, benevolent, courteous and kindly though he was, conducted the case, not as a stern and serious criminal proceeding involving the liberties of the defendants, but as a kind of town meeting or neighborhood caucus. The result was that the counsel for the defendants were prevented from proceeding with and trying their case to the best advantage of their clients. United States v. Brandt, 2 Cir., 196 F.2d 653.
 
 
 25
 Second, the denial to the defendants and their newly appointed counsel of the required additional time to adequately prepare for trial, with the result that they were unable to properly prepare and try the case.
 
 
 26
 Third, requiring that Kirkland be jointly tried with his co-defendants, charged in several indictments, when he was charged in only one.
 
 
 27
 Fourth, the refusal to permit a complete examination before the court out of the presence of the jury upon the question whether Kirkland's statement was freely and voluntarily given, and the holding that the matter must be heard and determined by the jury. Schaffer v. United States, 5 Cir., 221 F.2d 17, 21; United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48. This was error against Kirkland.
 
 
 28
 Fifth, its admission was error against the other defendants who could not under any circumstances be bound by the statement, since its introduction into evidence was not limited by appropriate instructions from the court, given at the time it was offered and in the charge, to receive it only against Kirkland and not against the other defendants.
 
 
 29
 The judgments are, therefore, Reversed and the causes are Remanded for further and not inconsistent proceedings.
 
 
 30
 The Appeal of Thompson.
 
 
 31
 This appeal concerns the conviction of Thompson on three indictments; Marianna No. 1339, in which he was charged with Wallace and Clifton Hawkins and James Clanton; Marianna No. 1340, in which he was charged with the two Hawkinses and Clanton; and Marianna No. 1341, in which he was charged with Wallace Hawkins, William Belvin, and Dock Perry Glenn.
 
 
 32
 Tried separately on all the indictments and convicted on all, Thompson is here insisting that he has not had a fair trial in that he and his appointed counsel did not have adequate time to prepare his defense, and he was, therefore, deprived of the assistance of counsel within the settled meaning of the Sixth Amendment and the decisions under it, and that, for these and other errors, the judgments against him must be reversed. We agree.
 
 
 33
 First, it was fundamental error, since Thompson was without counsel, to deny his motion for additional time to prepare for trial and to put him to trial on Wednesday, June 10, when his appointed counsel had had less than one day to make preparation for trial in a case complicated by the fact that there were three separate indictments involving other defendants as well who were not on trial and by the fact that the government had a statement which Thompson had given an investigator and which he vigorously contested as involuntary and coerced. This error was further compounded by the judge's attitude, as expressed several times, that the defendant was making unjust and unreasonable attacks on the officers of the court in asserting that he had been deprived of his rights and had been coerced or cajoled by them into making a statement.
 
 
 34
 As to the appointment of counsel for Thompson, the judge himself recognized that the time for preparation was inadequate. Stating, "I must appoint one even though he may not have as long a time as he would like to have to prepare", he fixed 2 P.M. on the 8th for a report to him whether or not a lawyer who would take the case could be found. When one was found, because the court felt that he could not appoint a lawyer for Glenn, he denied Glenn's motion for continuance and his request for the appointment of counsel and set his case for the 11th, placing Thompson's case for trial on the tenth, ahead of Glenn's case.
 
 
 35
 When Thompson's case was called on the 10th, the day for which it had been fixed, and Mr. Lewis, Thompson's lawyer, was asked if he was ready, he answered: "As much as I could be, your Honor." With the inadequate time thus afforded counsel to prepare his defense and no witnesses present for Thompson, the case then went to trial and, after several witnesses for the government had testified, Mr. Steinmeyer, government's counsel, called to the stand J. A. Callahan, a postal inspector, to testify to a written statement which had been given him by Thompson. The witness having identified the statement and having testified that Thompson had made and signed it, the district attorney offered it in evidence, whereupon Mr. Lewis stating, "Your Honor, please at this time I would like to object to this being offered in evidence, and I would like for the jury to be excused", the following occurred in the presence of the jury:
 
 
 36
 The Court: "You want to show that the statement was not freely made?"
 
 
 37
 Mr. Lewis: "Well, I want to show the entire circumstances under which it was made."
 
 
 38
 The Court: "Well, I think the jury ought to have that information if that is what you want to do."
 
 
 39
 Mr. Steinmeyer, the District Attorney, then intervened to say: "I believe it would be proper to excuse the jury", to which the court, still in the presence of the jury, replied: "You don't want them to hear it either?", and then said to Lewis, "Anything that you bring out in connection with the propriety of this statement, the jury has got to hear anyway, so I see no reason in sending them out." Cf. Schaffer v. United States, 5 Cir., 221 F.2d 17.
 
 
 40
 Mr. Lewis, then examining the witness, showed by his examination that Thompson was in jail at Marianna when the statement was taken and that Callahan had examined him for about four hours in the jail. Mr. Steinmeyer then insisted that it would be proper to excuse the jury, and this colloquy occurred:
 
 
 41
 The Court: "Well, I guess you are more tenderhearted toward the defendant maybe than I was. I thought I was too tenderhearted."
 
 
 42
 Mr. Steinmeyer: "Well, I want to be sure he gets a fair trial, your Honor."
 
 
 43
 The Court: "I thought I was too tenderhearted."
 
 
 44
 Mr. Lewis: "Well now if this jury will have as much sympathy as the rest of you have, we will be all right."
 
 
 45
 The Court: "You will be all right. Members of the jury, I will excuse you a few minutes."
 
 
 46
 Mr. Lewis then continued with his examination in the jury's absence, and the court interjected: "This is all written stuff. We can stipulate this", and when Mr. Steinmeyer stated: "Your Honor, I cannot stipulate to these facts", the court said: "Well I can stipulate to them."
 
 
 47
 In the course of the exercise in judicial stipulation, Mr. Lewis put before the court the great length of time that the defendant had been in jail and other circumstances connected with the taking of the statement, including a reference to the facts set out in defendant's motion to strike the statement, tending to show that it was not voluntary and free but coaxed and coerced, and the court having refused to let him interrogate the defendant out of the presence of the jury, he concluded his examination.
 
 
 48
 Thereupon the court, ruling as matter of law, though the facts would also support a contrary inference, that the statement was voluntary and, therefore, admissible in evidence, admitted it over the defendant's objection, and the long and detailed statement, evidently prepared by the agent with great care, was read into evidence.
 
 
 49
 Thereafter counsel for defendant, contending that no proper case had been made out against defendant, moved for a directed verdict on the ground that no case had been proven.
 
 
 50
 This motion was denied, the case was sent to the jury, and there was a verdict of guilty on all counts on all of the indictments.
 
 
 51
 While, as we have heretofore said of all the cases, there was evidence to take the case to the jury and it was not error to deny defendant's motion for directed verdict, the case was tried in such a manner as to deprive defendant of a fair trial in the particulars above set out and to require reversal of the judgment for trial anew.
 
 
 52
 The judgment is accordingly Reversed and the cause is Remanded for further and not inconsistent proceedings.
 
 
 53
 The Appeal of Glenn.
 
 
 54
 We begin by saying of Glenn's case, as we have said of the cases against the other defendants, that the evidence was sufficient to take it to the jury and that, if it had not been for the way and manner in which the case was tried and the procedural errors attending the trial, the judgment would have to be affirmed. We continue, however, by saying, as was pointed out in the judge's charge[3] to the jury in Glenn's case, that, under the government's evidence, Glenn was not deeply involved in the scheme. Indeed, of all those proceeded against in these indictments, Glenn was perhaps the least tarred by the evidence, and, therefore, the most seriously affected in his defense by the rulings and actions of the district judge, of which he complains.
 
 
 55
 Snow and Smith, the chief witnesses against Thompson and Glenn, did testify that Glenn was a party to the scheme charged, and Smith testified that Glenn, posing as Snow, did telephone to Snow's insurer to inform it of the wreck and Snow's claim. The fact, however, that Glenn got nothing out of the scheme, if there was one, and the fact that these two, who by their own testimony had turned state's evidence to save themselves, could, if Glenn had had a good lawyer to advise and defend him, to argue for him, and secure the proper charges, have been turned to his benefit and perhaps acquittal. Deprived, as he was, by the court's denial of his motions and requests: (1) for representation by counsel, (2) for a postponement of the trial to permit preparation of his case for trial, and (3) for subpoenas for the witnesses named by him; and by the actions of the court: (a) in permitting on the jury which was to try Glenn eight of the jurors who had sat in Everitt's case and been highly complimented by the court, (b) in overly directing and participating in the defendant's examination of the witnesses, and (c) in failing to give in charge to the jury instructions to which he was entitled and which might have enured greatly to his benefit, Glenn, in his vigorous efforts to present his case, had hard sledding. Though, therefore, the judge was uniformly courteous to, and kindly and patient with, Glenn from the beginning — indeed, in view of all the motions Glenn filed, including the wholly unwarranted motions attacking the integrity of the district judge, the district attorney, and the government agents, and seeking to recuse the judge, the judge exhibited the manners of a Chesterfield, the patience of a saint and the concern of an elder, for a younger and erring, brother, — Glenn's case was from the beginning a lost cause.
 
 
 56
 While we think that on the record the errors pointed out above are self evident and require no discussion, since the district attorney has sought to justify the fundamental error, the denial of defendant's request for counsel, we think it desirable to say of it that, on the record,[4] it is quite clear that the judge proceeded under a misapprehension of Glenn's position and of the court's obligation to appoint counsel for him, and that the case cited by the district attorney, Duke v. United States, 9 Cir., 255 F.2d 721, involving a lawyer defendant, is in no sense in point here.
 
 
 57
 It is too plain for argument that Glenn in this case did not have any such plot in mind as was imagined by the court in the Duke case, and it is equally plain that the judge in this case did not act on the view that Glenn had any such purpose in mind, but entirely upon his own view that hopeless confusion might result. Showing convincingly that his action was not based at all upon any such animus as that presented in the Duke case, the judge then went on to say that he wasn't going to hold Glenn to strict rules of evidence, that he was going to see that he got a fair trial and was not convicted unless the case was proved beyond a reasonable doubt, and he concluded by saying, "So you can go down there and be happy about it. If you are not guilty, you are not going to be convicted. If you are guilty, you ought to be convicted in this court, as everybody should know."
 
 
 58
 From then on, while the court was exceedingly courteous, exceedingly patient, exceedingly kind, exceedingly forgiving and forbearing, he was in complete charge of the case. By declining, to subpoena any of the witnesses named by Glenn and to permit him to endeavor to prove whether or not he was being sold down the river by them, and particularly by declining to permit Glenn to subject the government's witnesses to vigorous cross-examination and to discredit them by confronting them with, and examining them about, other statements, they were supposed to have made, he made it difficult, if not impossible, for Glenn to conduct his case effectively.
 
 
 59
 Of the error in denying subpoenas for witnesses, on the ground that none of them could testify to anything material to the case, it is sufficient to say that, in so ruling, the court overlooked the fact that the case made against the defendant was based largely, almost entirely, on testimony of self confessed accomplices who had turned state's witnesses, and that defendant had an affidavit from one of them saying that he had been misled into doing so. It was, therefore, certainly the defendant's right to use these witnesses in impeachment.
 
 
 60
 In respect of the error of using in Glenn's case substantially the same jury that brought in the convictions in Everitt's case so promptly and were complimented by the judge for doing so, it is sufficient to say that the district attorney's citation of Harbold v. United States, 10 Cir., 255 F.2d 202, will not at all do. The differences between this case and that are so marked that it is a matter of surprise that it should be cited. There, the defendants had counsel of their own choosing, and no challenge was made of the panel by them. Here, Glenn had no counsel, was without knowledge of his right to challenge and was not advised by anybody that he had that right.
 
 
 61
 Finally, the error of not affording appellant counsel since he had none of his own choosing, is made manifest by a comparison of the charge given by the judge in the Everitt case, where there were appointed counsel and self chosen counsel, and the judge gave a strong charge on the unreliability of accomplice testimony and the necessity for caution in examining and receiving it, while here, where such a charge was greatly needed, none was given.
 
 
 62
 The judgment is Reversed and the cause is Remanded for further and not inconsistent proceedings.
 
 
 
 Notes:
 
 
 [1]
 These indictments, together with indictments against William Belvin, James E. Clanton, Clifford Hawkins, Wallace Hawkins, Alfis O'Neal Thompson and Dock Perry Glenn, which were earlier tried as to all of the defendants except Thompson and Glenn, who were not then in custody, and the convictions in which were reversed in this court on Jan. 5, 1960, in Belvin et al. v. United States, 273 F.2d 583, were each and all returned on Feb. 7, 1958, in the United States District Court for the Northern District of Florida
 
 
 [2]
 Whereupon the district judge thus addressed the jury:
 "Members of the Jury, I will have to ask you to be back here tomorrow morning at 9:30. We will try to get a jury for the next case out of the remaining jurors who were not on this panel, but sometimes we are not always able to do this, but we will try. I may have to call on one or two of you, so I will have to ask you to return so you will be available in case the court should need you.
 "I don't think it will be out of place for me to say that I thoroughly agree with your verdict in this case. I go to trial in cases of this kind without any inclination on my part as to the facts. It is very important to me that I know nothing about the facts, except as I hear them from the witness stand just like you do. So far as I am concerned I never want to see a defendant convicted in my court that is innocent, and I want to say for jurors that never happens, when we get through with them no one is ever convicted that is innocent. Every once in a while a man that is guilty is turned loose on a technical ground and gets away, but that doesn't happen very often either. I might add, so far as this case is concerned that I think you rendered a proper verdict on the evidence here. The type of case is a bad case but that doesn't make a defendant have to be convicted if the evidence doesn't satisfy the jury and the court as to his guilt, because an innocent man could be in some way in a case that is a bad case in which he wasn't guilty, and he should be acquitted. I commend you, and the manner in which you have listened to it all, and on your prompt action in returning the verdict. (Emphasis added.)
 "I will see you tomorrow morning at 9:30 o'clock."
 
 
 [3]
 "This boy here never made any proof or claim, never made any affidavit. The only thing he did was to call the insurance company, using the other man's name. I want you to understand that that makes no difference whether he did anything else beyond that or not, as long as somebody used the mails to get the money on the false wrecks."
 
 
 [4]
 In Glenn's appearance before the court on June 1, 1959, the court inquired of Glenn as follows:
 The Court: "You don't want court appointed counsel?"
 Mr. Glenn: "I wouldn't refuse it but I don't want, ah, to be put in a position to where if I felt sure that there was something that needed to be done or said that I couldn't do it or ask that you or somebody get it done if he wouldn't."
 The Court: "Well, under those circumstances you had better let the Court help you try your own case then, because you couldn't get along with counsel on that basis."
 On June 11, 1959, when the case was called for trial, the following discussion transpired:
 The Court: "All right, sir. Now then there's one other motion here that I seem to have overlooked in which you again ask the court to appoint you counsel. Now, I think, wasn't it on Monday a week ago that I offered to appoint you counsel?"
 Mr. Steinmeyer: "Yes sir, Monday, June 1st."
 The Court: "Monday, June the 1st. I offered to appoint you counsel and I had a lawyer standing by that was going to get the counsel for you if you accepted counsel and you stated a condition under which I couldn't appoint counsel and when he saw he also shook his head. He said I could get no lawyer to accept the employment on the conditions you prescribed. Now if you want to change that this morning and want to get a lawyer to run your case and be controlled entirely by what he says and does in the conduct of your case, I'll get you a lawyer. What's your desire?"
 Mr. Glenn: "My desire is to retain my right to get in what I think is absolutely essential whether or not the attorney would. If he would do that I would appreciate having the assistance of counsel."
 The Court: "Yes, but according to the things you set up in these motions that you filed with me, you're not aiming at the trial of your case at all. You're aiming at an effort to try somebody else while — instead of you when I call your case for trial and no lawyer can sit with you under those circumstances. It wouldn't even be professional to do it. So I can't appoint a counsel for you under the basis you stated."
 
 
 On Petition For Rehearing
 
 63
 PER CURIAM.
 
 
 64
 It is ordered that the petition for rehearing filed by Ronnie J. Everitt in the above entitled and numbered cause be, and it is hereby
 
 
 65
 Denied.