William Dallas STEVENS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19375.

United States Court of Appeals
Fifth Circuit.

July 26, 1962.

Rehearing Denied Aug. 15, 1962.

Robert J. Malinak, Houston, Tex., for appellant.

Edward L. Stahley, Asst. U. S. Atty., Clinton Ashmore, U. S. Atty., Richard W. Ervin, III, Asst. U. S. Atty., Tallahassee, Fla., C. W. Eggart, 1st Asst. U. S. Atty., Pensacola, Fla., for appellee.

Before CAMERON, JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge.

The appellant, William Dallas Stevens, and others, were charged by indictment with violation of the Mail Fraud Statute, 18 U.S.C.A. § 1341. This is one of a number of cases in which the United States claimed that the defendants staged fake automobile accidents for the

purpose of defrauding insurance companies. In one of these cases, Everitt, et al., v. United States, 5th Cir.1960, 281 F.2d 429, Stevens was a successful appellant in obtaining the reversal for a new trial of a conviction upon the same indictment as was the basis for the conviction which is here under review. The most recent of these cases is Glenn, et al. v. United States, 5 Cir., 303 F.2d 536.[1] Stevens, on the retrial, was convicted on one count of a two-count indictment. He filed a motion for a new trial which was overruled and has appealed, asserting three specifications of error.

■ Count 1 of the indictment charged that the defendants formed a scheme and artifice to defraud an insurance company, and "for the purpose of executing the aforesaid scheme and artifice and attempting to do so caused to be delivered by the Post Office establishment of the United States a letter addressed to" the named insurance company which had been sent by a designated person and had transmitted described documents. The appellant's first contention is that the indictment is fatally defective and does not charge a violation of the statute[2] in that it failed to charge that Stevens knowingly caused the letter and documents to be delivered through the mail. The exact question was before the Court in the recently decided Glenn case where the contention there and here made was rejected, the Court saying that "the element established by 'knowingly' is satisfactorily described by the phrase, 'for the purpose of executing the aforesaid scheme and attempting to do so.'" As was there held, so we hold here that the indictment was sufficient.

The appellant moved for a directed verdict of not guilty and the motion was overruled. The second assertion of the appellant is that error was committed by the ruling. The ground assigned is that the evidence was not sufficient to establish the use of the mails. The mailing was alleged to have been of a letter addressed to The Hartford Accident and Indemnity Company, Midyette-Moore Building, Tallahassee, Florida, which letter had been sent by R. C. Evans, Panama City, Florida, transmitting affidavits of Roscoe Law and Rondel Kirkland. R. C. Evans was an attorney in Panama City who at that time was representing Ronnie J. Everitt, a claimant in one of the car accident cases which the Government claimed was phony. The Hartford office in Tallahassee was, it seems, in charge of its claim agent, Glenn Sears. It was his testimony that the Evans letter was received through the mail. He further testified that the mail sent to Hartford or to him was placed in a post office box in the Tallahassee post office from which it was picked up by his secretary who took it to the office, opened it and placed it on Sears' desk. The Evans letter was placed on Sears' desk.

■■ We do not think it is necessary, as Stevens urges, that there be positive and direct testimony that there was a placing in the mails, or positive and direct testimony of a taking from the mails. The showing of the customs, usages and practices in the course of business with evidence of the letter appearing in the customary channel of mail matter is enough to carry the question to the jury. United States v. Berg, 3 Cir. 1944, 144 F.2d 173; United States v. Leathers, 2 Cir. 1933, 135 F.2d 507.

1. See Belvin et al. v. United States, 5 Cir. 1960, 273 F.2d 583. See also Hawkins v. United States, 5 Cir., 305 F.2d 658 and Everitt v. United States, 5 Cir., 306 F.2d 839.

2. "Whoever, having devised or intending to devise any scheme or artifice to defraud * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon * * * any such matter or thing, shall be fined * * *." 18 U.S.C.A. § 1341.

The use of the mails may be established, like most other facts, by circumstantial evidence. The proofs made were such as warranted a submission to a jury and would justify the inferences as are implicit in a verdict of guilty. McNear v. United States, 10 Cir. 1932, 60 F.2d 861. And see Everitt v. United States, 5 Cir. 1960, 281 F.2d 429. The evidence is not materially different from that in the first trial, of which this Court said that it did not think the judgment should be rendered for failure of the evidence to make out a case for submission to the jury. We are of the same opinion with respect to the record now before us.

We come now to Stevens' third specification of error. As its final clincher witness to prove that the automobile accident was faked, the Government called Jimmy Dazey. After a few questions to provide background, Dazey was asked:

"Was that accident a faked or planned wreck?"

Dazey answered:

"That accident was a—was a wreck; it was a genuine wreck. My car—his car blinded me, I pulled across the white line, Mr. Stevens' car hit an embankment and rolled with him in the car."

Government counsel asserted surprise and asked leave to cross-examine Dazey as an adverse witness. The request was granted. Government counsel's questions, Dazey's answers, and the participation by the court, are thus shown by the record:

"Q. [By Mr. Stahley, Government Counsel] Have you made any statement to Postal Inspector Callahan relating to the events you have talked about here just now?

"A. I sure did.

"Q. I want to hand you this—

"A. I would like to make a statement about that statement; may I?

"THE COURT: Yes, sir.

"Q. Do you need to read the statement when you are making your statement?

"A. No. in 1958 the electric—not electrical inspector, postal inspector came to my house and told me that Inspector Callahan wanted to talk to me in the post office in—uptown in Memphis. I said all right. I had no idea what that was about, the visit, or anything about it. So I went the next day and was carried into the—to his office, or the one that he was using. He right off the bat asked me some questions about my brother-in-law being involved in some wrecks, and I knew nothing of them and indicated so. Well, right off the bat he more or less—he scared me. He said that if I didn't play ball with them that he would have me locked up within twenty-four hours, this was carried before a Grand Jury and indicted and locked up. And he said he realized that he knew the condition of my wife, we were expecting a baby, and the fact that we had lost a baby the year before, and under those circumstances I signed a statement. But I would have signed anything about right then, because it scared me.

"Q. Was the statement you signed the truth?

"A. I couldn't be sure, I—he was making it up, and I was answering yes and no and—"

"Q. Did you give another statement to an insurance investigator relating to this same set of facts situation?

"A. I gave a—gave my insurance company a statement, I am sure.

"Q. I am talking about insurance investigators.

"A. No.

"Q. I want to hand you this statement that you gave to—I want to hand you this; ask you if you can identify it? It is a matter of three pages.

"A. That is my signature.

"Q. Is that there your signature, too?

"A. That is my signature. But as far as what—

"Q. Is that there your signature too?

"A. As far as what is in it, I couldn't be sure to that—to that.

"Q. Well, let me refresh your memory, if I can, by pointing to the—

"A. It has been—

"Q. Certain things that are in it, and see if you can recall them as being what you said at that time. Let me call your attention to this one here, this paragraph here.

"A. Well, that was five years ago, and I couldn't be sure as to when I met Mr. Stevens.

"Q. Is that the signature—is that your signature on the bottom of that page?

"A. Yes, it is. And like I said, at that time I—I would have signed anything to keep from going to jail.

"THE COURT: The question is whether or not you related those facts as set out in that statement about the Byhalia accident.

"MR. STAHLEY: This one.

"THE COURT: —to Mr. Callahan on that occasion; did you or didn't you?

"WITNESS: Yes, sir; I—I must have submitted these; yes, sir.

"THE COURT: Did you give him those facts?

"WITNESS: I—

"MR. STAHLEY: Start with this paragraph.

"THE COURT: Read them.

"MR. STAHLEY: Take your time.

"WITNESS: Yes, sir.

"THE COURT: All right.

"Q. Are these facts that you gave Inspector Callahan the truth of the situation as it occurred at Byhalia, Mississippi, during that time?

"A. That particular paragraph is; I—I didn't go into any more—

"THE COURT: Let me have that statement; we are wasting a lot of time. Did you tell Callahan on or about the 22nd of May, 1958, Postal Inspector Callahan, that you and Billy set up plans for a wreck to be staged someplace in the vicinity of Memphis; did you tell him that or anything to that substance and effect?

"WITNESS: Yes, sir.

"THE COURT: Did you tell him this wreck was to be between your 1954 Oldsmobile and his 1954 Mercury?

"WITNESS: I didn't tell him anything.

"THE COURT: Did you tell him anything to that substance and effect?

"WITNESS: Yes, sir.

"THE COURT: You did; all right. Did you tell him anything to this substance and effect: 'It was arranged that we would meet on Sunday night at Byhalia, Mississippi?'

"WITNESS: Yes, sir.

"THE COURT: All right. Did you tell him anything to this substance and effect: 'In accordance with our agreement, Billy Stevens and I met at the post office in Byhalia at about six p. m. on Sunday night?'

"WITNESS: I can't remember where we met; yes, sir.

"THE COURT: Did you tell Callahan this?

"THE WITNESS: Oh, I don't remember that.

"THE COURT: All right. Did you meet Billy Stevens at Byhalia, Mississippi—

"WITNESS: Yes, sir.

"THE COURT: —before the wreck?

"WITNESS: Yes, sir.

"THE COURT: All right. I don't believe I want to hear any more testimony from this witness. I want to certify in the record that the Court wouldn't believe him on oath, and I don't want to waste the jury's time taking any more testimony from him. You can go back to the witness room.

"MR. STAHLEY: The Government rests, your honor.

"THE COURT: All right, case with the defendant. You want—you want to cross-examine that witness?

Counsel for Stevens moved for a mistrial on the ground that the court's intervention and participation in the trial were prejudicial and precluded a fair trial. The motion was overruled. This action of the court is specified as error. The court included in its charge to the jury the following:

"Now gentlemen, lest I overlook it, during the trial of this case, and while the witness by the name of Dazey was on the witness stand, this court certified into the record in your presence that in the opinion of this court the witness, Dazey, was not to be believed on oath, and since there was no cross-examination of the witness excused him from the court room. The United States is not charged in the case with the misconduct of the witness, Dazey. The defendant, Stevens in this case, is not to be charged with any misconduct on the part of the witness, Dazey. You are not to consider the incident or any aspect of that incident insofar as bearing any light on the guilt or the innocence of defendant, Stevens, as to either count in this indictment."

No exception was taken to this or any other part of the court's charge to the jury.

In excusing Dazey and in the subsequent charge to the jury the court stated that in the opinion of the court Dazey was not to be believed under oath. However much justification there was for the inference drawn by the court and certified to the jury, the invasion by the court into the province of the jury in the determination of matters of credibility cannot be sanctioned.

The trial judge, in examining or cross-examining witnesses or in commenting on evidence, must be careful not to leave with the jury the impression that they are bound by his comments concerning fact issues such as credibility. United States v. Stayback, 3 Cir. 1953, 212 F.2d 313, cert. den. 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714; United States v. Chiarella, 2 Cir. 1950, 184 F.2d 903, reversed and remanded for resentencing, 341 U.S. 946, 71 S.Ct. 1004, 95 L.Ed. 1370; United States v. Frankel, 2nd Cir. 1933, 65 F.2d 285, cert. den. 290 U.S. 682, 54 S.Ct. 119, 78 L.Ed. 588; Palno v. United States, 8th Cir. 1932, 58 F.2d 111. A comment by the judge that a witness is not to be believed is prejudicial error unless instructions are given which make it clear that the court's observation is not binding on the jury. In the case at bar the court not only failed to give such an instruction but gave the impression that the witness' testimony could not be considered. In its charge the court repeated its opinion as to the credibility of the witness and referred to his testimony as "misconduct." The question of credibility was taken from the jury. Although the error in the charge may not have been properly preserved by the appellant's counsel, it is such that we think it requires our consideration under the plain error rule and a reversal for a new trial.

Reversed and remanded.

On Petition for Rehearing.

PER CURIAM.

The United States Attorney, in petition for rehearing, suggests that our opinion in this case is in conflict with the decision in Slade v. United States, 5th Cir. 1959, 267 F.2d 834. A re-examination of that opinion and a recon-

sideration of that which has been decided in this case disclose no conflict. The conclusions reached and stated are adhered to and the petition for rehearing is

Denied.