**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charlie Will THOMPSON,**
**Defendant-Appellant.**

**No. 79–5590.**

United States Court of Appeals,
Fifth Circuit.

April 10, 1980.

Tom Radney, Alexander City, Ala., for defendant-appellant.

Barry E. Teague, U.S. Atty., Kent B. Brunson, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GEE, FAY and VANCE, Circuit Judges.

FAY, Circuit Judge:

A federal jury in the Middle District of Alabama convicted Charlie Will Thompson of conspiring to violate and violating election laws in a federal election, by acts made unlawful under 18 U.S.C. § 371 (1976) and 42 U.S.C. § 1973i(c) (1976). On appeal Thompson contends that the trial court, by dismissing a government witness and instructing the jury to disregard her surprise adverse testimony, usurped the jury's function and deprived him of his constitutional right to cross-examine the witness. Thompson further asserts that unfair prejudice sprang from pervasive pretrial publicity and from admission of evidence suggesting appellant's transgression of his county's liquor laws. Finding that the trial court erred in dismissing the government's witness and excluding her testimony, we reverse appellant's conviction on the count to which the witness's testimony appertained. As to the remaining counts, we affirm.

Appellant Thompson, incumbent sheriff of Randolph County, Alabama, faced a close runoff election for office in September, 1978. He won the election but lost the office when the Federal Bureau of Investigation uncovered evidence leading to his indictment for conspiring to buy and buying votes in a federal[1] election, and for aiding

1. 42 U.S.C. § 1973i(c) (1976) proscribes certain conduct in relation to registering and voting in "elections held solely or in part for the purpose of selecting or electing any candidate for the

and abetting others to do the same for him. Leading to Thompson's arrest and indictment were certain voters' Request for Assistance forms labeled "sold vote." Eventually, many voters admitted that Thompson's campaign workers not only paid cash for votes for Thompson but in several instances even accompanied voters into the booth to insure the voters' compliance, pursuant to false voter assistance request affidavits. Especially damaging to Thompson's case were statements by Robert L. Brown, Jr., one of Thompson's campaign workers charged with election law violations. As part of a negotiated plea agreement, Brown admitted that Thompson gave him both cash and liquor with which to buy votes.

Brown reached the plea agreement with the government about two weeks before trial began. Apparently deeming the agreement a significant step in the case, the United States Attorney called a local television station to release the news of Brown's change in plea. At his request, a reporter came to his office and filmed a brief interview. In the news clip released that night the United States Attorney repeated the substance of Brown's admissions and his implication of Thompson.

When trial began, the United States Attorney called Brown and several other witnesses who had previously told the grand jury that Thompson's campaign workers had tried, with varying measures of success, to buy their votes. To the prosecutor's chagrin, however, one witness deviated from her grand jury testimony, omitting any reference to cash offers for her vote. To refresh her memory, the prosecutor read parts of her recorded prior statements to her, outside the jury's presence. Eventually she acknowledged having admitted to the grand jury that she took $5.00 for her vote. When the jury returned, however, the witness denied ever having taken money for her vote. Confronted with this contradiction, the trial judge interrupted the prosecutor's questioning and initiated the following exchange:

THE COURT: This Court finds this witness unworthy of belief. I direct the jury not to consider anything she has said as having any bearing on the case and direct the United States Attorney to hold her for perjury. The witness is dismissed from this proceeding.

MR. TEAGUE [United States Attorney]: Your Honor, may I ask her one further question?

THE COURT: No, sir, she is not worthy of belief.

MR. TEAGUE: Okay, thank you, Your Honor.

THE COURT: You may come down. You are in the custody of the marshal.

Let me make it very plain to this jury that nothing this witness has said should be considered either in favor of or against either party. Just disregard her testimony and all of the questions that have been asked her. Do not consider any part of it.

MR. HAMNER [Defense Counsel]: Excuse me just a moment for a motion.

THE COURT: Yes, sir.

MR. HAMNER: At the first recess may we have an opportunity to make a—

THE COURT: You may make your objection now if you have one.

MR. HAMNER: May we approach the bench?

THE COURT: No, sir, make it in the open.

MR. HAMNER: If Your Honor please, we think this spectacle of the district attorney putting on a witness, having some testimony that directly conflicts previous witnesses, put on by the government and then the Court at that time instructing the jury in this manner has got to be confused

office of . . . Member of the United States Senate." The record in this case indicates that names of candidates for the office of

United States Senator were on the same ballot with names of candidates for the local sheriff's office. Record at 94.

possibly by any juror and in that manner prejudice the defendants in about this case. At this time we move for a mistrial.

THE COURT: All right, sir, mistrial denied.

I will say this, I will let your side call this witness for any purpose you see fit to call her, but I find her testimony so far as completely unworthy of belief.

Although contradictory testimony such as that confronting the trial court here must surely provoke judicial indignation, case law precedent and constitutional precepts forbid judicial interference with the jury's duty to resolve credibility issues. The United States Supreme Court forbade judicial determination of credibility of a defendant-witness many years ago, in *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). Moreover, in parallel cases not cited to us by either party, this court has held that to instruct the jury to accord or deny a witness credibility is to deprive the defendant of a fair trial.

In *Stevens v. United States*, 306 F.2d 834 (5th Cir. 1962), a witness called by the government gave testimony contradicted by his prior written statements. Claiming surprise, the prosecutor obtained permission to cross-examine the witness. After a confusing colloquy between the prosecutor and the witness, the trial court intervened and asked the witness several questions. Apparently unsatisfied with the results of his inquiry, the judge cut off further testimony, dismissed the witness, and stated for the record that he would not believe the witness on oath.[2] On appeal, the *Stevens* court reversed the defendant's conviction and remanded his case for retrial, holding that:

A comment by the judge that a witness is not to be believed is prejudicial error unless instructions are given which make

it clear that the court's observation is not binding on the jury. In the case at bar the court not only failed to give such an instruction but gave the impression that the witness' testimony could not be considered. In its charge the court repeated its opinion as to the credibility of the witness and referred to his testimony as "misconduct." The question of credibility was taken from the jury. Although the error in the charge may not have been properly preserved by the appellant's counsel, it is such that we think it requires our consideration under the plain error rule and a reversal for a new trial.

*Id.* at 838. Even more compelling than the vigorous expression of judicial opinion in *Stevens* is the judge's actual instruction in the present case that the jury give the witness no credence.

In *United States v. Bates*, 468 F.2d 1252 (5th Cir. 1972), a witness gave testimony contrary to his prior written statements to investigators. After a lunch recess and conversation with the prosecutor and trial judge, the witness resumed the stand that afternoon and recanted the testimony he had given that morning. Immediately the trial judge instructed the marshal to arrest the witness for the perjury committed that morning. On appeal the defendant's conviction was reversed and his case remanded because the trial judge had usurped the jury's function of credibility determination, unconstitutionally depriving the defendant of a fair trial. Held insufficient to cure the error was the court's instruction that the jurors were the sole judges of witness credibility. The remarkably similar judicial reaction in the case now before us merits similar remedy. *See also United States v. Blevins*, 555 F.2d 1236, 1240–41 (5th Cir. 1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978).

---

**2.** Understandably, defense counsel in *Stevens* declined the judge's proffer of an opportunity to cross-examine the witness. Mirroring that resignation was the defense attorney in the present case, who declined to call as his witness a woman whose testimony had been utter-

ly discounted. The attorney did, however, request an opportunity to cross-examine her. The request was denied. Having expunged all the witness's testimony, the court left literally no testimony to be subjected to cross-examination.

The government argues that Fed. R.Evid. 403 [3] authorized the judge to "protect[ ] the jury" from the witness's contradictory testimony. Brief for Appellee at 27. We cannot agree. Rule 403 does not permit exclusion of evidence because the judge does not find it credible. Therefore, expunging the witness's testimony was an abuse of discretion.

Moreover, the exclusion rose to the level of constitutional error by denying the defendant his right to a fair trial on the count to which the witness's testimony appertained. Accordingly, we reverse appellant Thompson's conviction on Count V of his indictment, which charged Thompson with violating the election laws in connection with that witness. As to other counts in the indictment we hold the error harmless, because Thompson failed to reveal what light that witness could have shed by testifying on matters affecting other counts. Indeed, the jury's verdict, which found Thompson guilty on some counts and not guilty on others, suggests that the jury did not consider the judge's remarks when deciding the outcome of charges other than the one involving that witness's testimony. *See also United States v. Washington*, 550 F.2d 320, 324–25 (5th Cir.), *cert. denied*, 434 U.S. 832, 841, 98 S.Ct. 116, 138, 54 L.Ed.2d 92, 105 (1977).

Less meritorious is Thompson's assertion that pretrial publicity so permeated the community that it deprived him of due process. Certainly, the United States Attorney's decision to call a news conference, to disperse news of Brown's plea agreement and his implication of Thompson, is a perplexing one. Newspaper clippings in the record indicate that the vote-buying scandal sparked popular news items that needed no fanning by the government.[4] Nonetheless, we have independently evaluated the circumstances surrounding the trial, pursuant to *United States v. Capo*, 595 F.2d 1086, 1090 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 660, 62 L.Ed.2d 641 (1980), and find no abuse of discretion in the trial court's refusal to grant a continuance. *See United States v. Nix*, 465 F.2d 90, 95–96 (5th Cir.), *cert. denied*, 409 U.S. 1013, 93 S.Ct. 455, 34 L.Ed.2d 307 (1972).

To show that pretrial publicity deprived him of a fair trial, Thompson must show actual prejudice created in the prospective jurors by the publicity. *See Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *United States v. Capo*, 595 F.2d at 1090. In this case, Thompson fails to make the requisite showing. He does not reveal the highly inflammatory publicity or intensive media coverage from which prejudice may be presumed. *See United States v. Capo*, 595 F.2d at 1090; *United States v. Williams*, 523 F.2d 1203, 1208 (5th Cir. 1975). He also has failed to show any prejudice in fact. As in *Capo*, the trial court took appropriate measures to ensure that an unbiased jury was empaneled.

The judge conducted an extensive voir dire of the jury venire to ascertain whether pretrial publicity had created a predisposition on the part of some prospective jurors. The inquiry revealed that only ten of the venire members had heard any publicity regarding the case. As a result of a separate voir dire of these ten, subsequently conducted by government and defense counsel in the judge's chambers, two jurors were stricken for cause. Of the remaining eight who had heard or seen publicity on the case, the government excused two and defense counsel two, eventually leaving four on the jury who had been subjected to some publicity. Defense counsel did not use his peremptory challenges to strike

---

**3.** Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**4.** The court was impressed with the sincere regret expressed by the United States Attorney as to holding such a news conference. We anticipate that such conduct will not be repeated.

these remaining jurors who had been subjected to publicity on the case, indicating that the possibility of jury prejudice did not cause him great concern before trial. Indeed, counsel admitted at oral argument that he could not prove any specific instance of prejudicial error, but only argued generally that prejudice permeated the entire trial. Having failed to reveal how publicity deprived Thompson of a fair trial, the claim of constitutional error is but a conclusory contention which cannot secure reversal.

■ Finally, appellant Thompson argues that he was denied a fair trial when the judge admitted evidence that, at election time, Thompson had liquor in his home in a dry county. At the admission of the evidence and also in the final jury charge, the judge cautioned the jury not to consider Thompson's alleged possession in a dry county, except as the evidence bore on the charge of buying votes with liquor. At defense counsel's request, the judge also instructed the jury that state law permitted mere possession of limited quantities of alcoholic beverages. We find that these instructions adequately limited the jury's use of the evidence. Any error in showing that the county was dry was clearly harmless. "When an error is not of constitutional magnitude, it is not grounds for reversing a conviction if the error had no substantial influence, and enough evidence supports the result apart from the phase affected by error." *United States v. Stone*, 604 F.2d 922, 926 (5th Cir. 1979).

For erroneous judicial comment on the testimony of one witness, Thompson's conviction on Count V of his indictment is REVERSED and REMANDED. As to all other counts, his conviction is AFFIRMED.