**UNITED STATES of America**

v.

**Eugene GAINES, Appellant in 19405, et al.**

**Appeal of Reginald DENT, No. 19404.**

**Nos. 19404, 19405.**

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1971.

Decided Sept. 24, 1971.

As Amended Nov. 1, 1971.

Hal F. Doig, Zink, Shinehouse & Holmes, Philadelphia, Pa., for Reginald Dent.

Alex Bonavitacola, Robinson, Greenberg, Lipman, Kattelman & Bonavitacola, Philadelphia, Pa., for Eugene Gaines.

Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before FORMAN, ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

In a four-count superseding indictment (Cr. 70–318), Eugene Gaines, Reginald Dent, the appellants, and John Dent [1] were accused (1) of conspiracy under 18 U.S.C. § 371 to commit the offenses named in the following substantive counts; (2) unlawfully entering the Continental Bank & Trust Company (the Bank) at Adams Avenue and Howland Street, Philadelphia, Pennsylvania, insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 2113(a); (3) taking and carrying away $24,598.00, in violation of 18 U.S.C. § 2113(b); and (4) putting in jeopardy the lives of certain employees of the Bank and witnesses while committing the above-named offenses, in violation of 18 U.S.C. § 2113(d).

Reginald Dent and Eugene Gaines were brought to a jury trial and took the stand in their defense, but were convicted of all counts in the indictment. Each was represented by separate coun-

---

1. John Dent entered a guilty plea to the indictment as did a fourth defendant, James A. Smith, to a separate indictment.

sel, who made motions for a new trial, which were denied. Each was sentenced to a term of 25 years, subject to a study and resentencing as provided by 18 U.S.C. § 4208(b). On completion of the study, Eugene Gaines was resentenced to six years on the fourth count under 18 U.S.C. § 4208(a) (2), and imposition of sentence on Counts 1, 2 and 3 was ordered suspended.[1A] The record discloses no further disposition of the sentence of Reginald Dent. Appellants filed timely notices of appeal.[1B]

At the trial there was testimony that in mid-morning of November 26, 1969, the Bank was entered by four men, who robbed it at gun point of $24,598.00. The robbers made their getaway in a U-Haul auto-van, which was shortly overtaken by the police in the vicinity of the Bank. Three men, Reginald and John Dent and James A. Smith were apprehended in the van. The fourth man was seen to flee from the van. Also found in it were two shotguns and the precise amount of stolen money, $24,598.00. Within a half-hour of the robbery, Eugene Gaines was picked up by the police not far from the Bank.

### Appeal of Reginald Dent
### No. 19,404

Mr. Dent's first contention is that the charge of the District Judge was erroneous in that he used prejudicial language and, in effect, usurped the province of the jury in its prerogative of solely determining Mr. Dent's credibility.

In summarizing the evidence concerning Mr. Dent, the District Judge stated as follows:[2]

"The evidence against Reginald Dent is more cumulative than against Eugene Gaines. He was identified by Catherine Degirolamo and Marjorie Griffith. He was identified in court before you without any hesitancy. He was identified at a pretrial proceeding in connection with this case when he was sitting in the third or fourth row back with six or seven other young Negro males. Marjorie Griffith identified him on that occasion. He was identified by Miss Griffith immediately after the robbery when the men that the police apprehended were taken back to the bank. He was identified at the lineup later that day. He doesn't deny having been there. He testified that he just happened to be around that corner that day when all of a sudden his brother and three other men came running out of this bank and said, 'Come on, Reginald,' and he hops into the truck. *Now, can you believe that or is this another coincidence?*

"*You determine in your own mind whether there is any substance to his defense whatever.*

"*He [Mr. Dent] more or less had to admit he was in the truck because there was just no question about his being arrested in the back of the truck with a shotgun in his hand, although he denied that.*

"*The police officer, Officer Moore, who, thank God, was not a murder victim as a result of this affair, testified.*

"So he explains being in the back of the truck by saying he just happened to be standing there when these men came out of the bank.

"Well, members of the jury, I say to you sincerely it is your function to make the final factual adjudication in this case, and although I am permitted by law to express an opinion to you

---

1A. Though the resentencing occurred while this appeal was pending, the procedure is approved in Corey v. United States, 375 U.S. 169, 173–175, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963).

1B. Appellants filed notices of appeal prior to entry of judgment of conviction. Such premature notice will be deemed to have been filed on the date of entry of judgment of conviction under Fed.R.App.P. 4(b).

2. The portions of the charge to which Mr. Dent objects, are in italics.

so long as I leave the final say to you, I don't ordinarily, and I won't in this case.

"This is a very, very serious crime, and you have a very, very serious duty to perform here. *I submit to you that you should not permit yourselves to be fooled by stories that simply don't make sense.* You are not asked to leave your common sense outside when you get into a jury box. You are asked to bring that into the jury box with you and use it to analyze the testimony and come up with a verdict which makes sense in the light of the evidence you have heard in the case." (Emphasis supplied).

Mr. Dent first contends that the statement, "Now, can you believe that or is this another coincidence?" constituted an instruction to the jury that Mr. Dent was unworthy of belief, and was compounded by the language immediately following, "You determine in your own mind whether there is any substance to his defense whatever." In addition, he argues that this language was accompanied by "sarcastic intonations."

Secondly, Mr. Dent alleges that the language relating to his arrest in the van informed the jury that he was both arrested in the van and that he had a shotgun in his hands. Mr. Dent contends that there was a question whether he had a shotgun in his hands at the time he was arrested and that the trial judge, therefore, attempted to press a disputed issue upon the jury as fact, usurping the jury's function to be the final fact finder. He urges further that the next sentence referring to Officer Moore served to emphasize the prejudice allegedly established.

Thirdly, Mr. Dent complains that the language of the District Judge concerning "stories that simply don't make sense" allegedly following comments on his testimony, again amounted to an instruction that he was unworthy of belief, and constituted reversible error.

It is well settled that a federal judge is not required to refrain from expressions of opinion during his charge to the jury. Unquestionably, any comment by a trial judge concerning the evidence or witnesses may influence a jury considerably, and emphatic or overbearing remarks particularly may be accepted as controlling, thus depriving a defendant of his right to have questions of fact and credibility determined by the jury. If the judge exercises restraint in his comments, however, and makes it clear in his charge that the jury remains the sole determiner of credibility and fact, he has not overstepped the permissible limits of comment. In Quercia v. United States,[3] the Supreme Court stated that:

"In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks is necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."

The Court stated further that:

"This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This

---

3.  289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933).

Court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided.' " [4]

■ In the present case, an examination of the language of the District Judge, viewed in light of his complete charge, compels the conclusion that he did not overstep the sphere of proper judicial comment, as defined in *Quercia, supra*. Mr. Dent's second objection, interpreting the District Judge as conclusively stating that he was apprehended in the van with a shotgun in his hands, falls of its own weight. Mr. Dent admitted that he was arrested in the van, and contested only the alleged fact that he had a shotgun, as the police officer had testified. The plain meaning of the District Judge's statement was that Mr. Dent was arrested in the van, although he denied, in opposition to the testimony of the police officer, that he had a shotgun. Mr. Dent's interpretation is strained and could not have misguided the jurors as he complains. In addition, following almost immediately upon this statement, the District Judge instructed the jury, as he had six times throughout a charge running eleven pages, that they were to make "the final factual adjudication in this case." [5] This instruction

was sufficient to eliminate any possibility of prejudice.

■ On the other hand, the District Judge's remark concerning the good fortune of Officer Moore was gratuitous and approached the limits of appropriate judicial comment. Yet the evidence pointing to the guilt of Mr. Dent was overwhelming, and the District Judge fully instructed the jurors that they were the sole determiners of fact and credibility repeatedly throughout his charge. Hence, the language to which Mr. Dent objects does not constitute error.

■ Mr. Dent's two other objections to the language of the trial judge are not sustainable when viewed in light of the charge as a whole. The comment questioning the "coincidence" of Mr. Dent's presence at the scene of the robbery was related in the context of the District Judge's summary of the evidence. Immediately preceding the remark to which Mr. Dent objects, the Judge had referred to numerous alleged circumstances which would have had to constitute coincidence in order to exonerate appellant, Mr. Gaines, from guilt.[6] The trial judge then reiterated Mr. Dent's testimony that he happened to be at the scene of the robbery, and asked whether this was another coincidence. Since evidence of coincidental events was presented during the trial, this remark could not have prejudiced the jury to the extent of finding that Mr. Dent was unworthy of belief, and justified the Dis-

---

4. *Id.*, at 470, 53 S.Ct., at 699. These principles have been widely followed with respect to judicial comment on the evidence during both the trial and the charge to the jury. See Moody v. United States, 377 F.2d 175, 178–180 (5 Cir. 1967); United States v. Chibbaro, 361 F.2d 365, 378–379 (3 Cir. 1966); Stevens v. United States, 306 F.2d 834, 838 (5 Cir. 1962); United States v. Kravitz, 281 F.2d 581, 584–585 (3 Cir. 1960), cert. den., 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961); United States v. Stayback, 212 F.2d 313, 319 (3 Cir. 1954), cert. den., 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955); United States v. Curzio, 170 F.2d 354, 357 (3 Cir. 1948).

5. See note 9, *infra*.

6. In discussing the evidence concerning Mr. Gaines the District Judge stated:
    "In analyzing that testimony you can also consider some of the other evidence in the case. Was it just a coincidence that the driver's license used to rent this truck was the driver's license of Eugene Gaines? Was that just a coincidence? Was it just a coincidence that Eugene Gaines happened to be in the area a couple of blocks from the bank right after it was held up? You determine whether on the whole you have any serious doubt as to whether or not the defendant Eugene Gaines was the driver of the truck."

trict Judge in so framing his terminology. The language in the following sentence, "you determine in your own mind whether there is any substance to his defense whatever" does not support the allegation of an attempt to compound the prejudice allegedly established in the previous sentence. Nor is the complaint supported by Mr. Dent's belated suggestion here that sarcastic intonations used by the District Judge revealed his intent toward prejudice. In the absence of any objection to the District Judge's intonation at the trial, there is no basis for such an imputation now.[7]

Lastly, even assuming arguendo that the statement, "I submit to you that you should not permit yourselves to be fooled by stories that simply don't make sense," constituted an expression of opinion concerning Mr. Dent's credibility, it was well within the boundaries of the District Judge's discretion.[8] As mentioned above, the District Judge repeatedly instructed the jury that they were the sole determiners of credibility and fact, and that their judgment in those matters was to govern.[9] Contrary to Mr. Dent's assertions, these instructions were neither "boiler plate" nor did they tend to present the government's evidence as indisputable.[10]

Mr. Dent advances several cases which he alleges demonstrate that the com-

7. See Billeci v. United States, 87 U.S. App.D.C. 274, 184 F.2d 394, 401 (1950) in which the court stated:
   "* * * * if the trial judge conducts himself erroneously to the detriment of the defendants it is incumbent upon counsel to record such action at the time."
   See also DeLuna v. United States, 308 F.2d 140, 155 (5 Cir. 1962), in which the court stated:
   "In Thomas [Thomas v. United States, 5 Cir., 287 F.2d 527] and Fogarty [Fogarty v. United States, 5 Cir., 263 F.2d 201] this Court referred to the strong evidence of guilt to support its decision not to take special notice of an alleged error in the trial that had not been properly preserved for appeal by timely objection. The instant case is quite different. The error was properly preserved for appeal, and in the circumstances of this case the error was serious."
   In the present case, following the District Judge's charge, Mr. Dent's attorney indicated that he would take some exceptions to the charge, but when asked by the Judge before the end of the trial if he had "anything further," he stated, "I have nothing."

8. See United States v. Kravitz, 281 F.2d 581, 584 n. 4 (3 Cir. 1960, cert. den., 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961)), in which this Court upheld the statement:
   "Let me say quite frankly to you that I do not believe Joseph Abrams absolutely and in all respects."
   The remark in the present case to which Mr. Dent objects is stated in considerably weaker language. See also cases cited note 4, *supra*.

9. Examples of the caution with which the District Judge instructed the jury are the following:
   "As you probably know, you are the supreme judges of the facts,· and it is up to you in your deliberations to determine what the facts are. You determine the questions of credibility of the witnesses, and you determine the question of probative value of all of the evidence.
   "If I say anything or counsel has said anything which is inconsistent with your collective recollection of what the testimony in this case was, you are to be governed by your own collective recollection and not by what counsel might have said or I might have said as to what the evidence was."
   * * * * *
   "As I said, credibility of witnesses is entirely up to you. One of your most important functions is determining who to believe.
   "You are at liberty to accept any witness' testimony in whole if you believe it wholly true, or you are at liberty to reject it in toto if you believe it completely false, or you are at liberty to select that part of the witness' testimony that you think is true and reject that part of the witness' testimony that you don't think is true. That is peculiarly your function."

10. Mr. Dent refers to Hardy v. United States, 118 U.S.App.D.C. 253, 335 F.2d 288 (1964), rev'd on other grounds, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), and Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d 355 (1957) to support the contention that the trial judge presented the government's case as indisputable. These cases are clearly in-

ments of the District Judge must be deemed error. They are, however, clearly distinguishable from the present case. In Billeci v. United States,[11] the judgment of the District Judge was reversed because of his failure to properly charge the jury on "reasonable doubt" and because in his charge the District Judge stated that the jury must bring in a verdict on the evidence and on the law as he had earlier stated it. Since the facts were vigorously disputed, the appellate court held that the trial judge had usurped the function of the jury by actually directing the verdict. In the instant case, none of the comments to which Mr. Dent objects approach a demand for a guilty verdict by the jury. In Stevens v. United States,[12] the District Judge stated during both the trial and in his instructions that the testimony of a witness under oath was not to be believed.[13] As in *Bilecci, supra,* the appellate court held that such a comment constituted an invasion of the province of the jury, and therefore, prejudicial error.

With respect to the present case, the comments of the trial judge were far from the flat statement of disbelief of the testimony of the witness found in *Stevens.* The foregoing reasons prompt the conclusion that Mr. Dent has failed to substantiate his contention that the District Judge overstepped his role and usurped the province of the jurors to rule on facts and credibility as he charged in his three points.

■ Mr. Dent also urges that he was "fatally prejudiced" when, early in the trial, the prosecution offered for identification and displayed before the jury two pistols which remained exposed to view in the courtroom during the trial. The government apparently became aware late in the trial that it could not link the pistols to the appellants, and called as its witness an agent of the Federal Bureau of Investigation who admitted that he was mistaken in his understanding that one of the pistols was found near the van implicated in the robbery. The Assistant United States Attorney conceded the inadvertence of the offer of the pistols during his summation, and the trial judge commented thereon in his charge:

" * * * two of the men had shotguns and another two may have had pistols, although the pistols apparently were never recovered."

The pistols were never identified by any witness, were never admitted into evidence, and their inadvertent exposure was conceded by the prosecution. When they were exhibited to the two Bank teller witnesses present at the robbery, one, Catherine DeGirolamo, identified Mr. Dent as participating in it and testified that he had a silver pistol in his hand. She went no further than to state that the pistol was "similar" to one of those in the courtroom, but declined to say that she could identify the very weapon. The other Bank teller witness, Marjorie Griffith, also identified Mr.

apposite here. In *Hardy,* the District Judge was reversed because in his charge he presented the government's evidence as fact without reference to the defendant's evidence, and then stated, "That is all there is to the case." In *Blunt,* the District Judge erred by telling the jury that the defendant's acts were planned, when this issue was in fact disputed.

11. See note 7, *supra.*

12. 306 F.2d 834 (5 Cir. 1962).

13. During the trial the District Judge stated:

"All right. I don't believe I want to hear any more testimony from this witness. I want to certify in the record that the Court wouldn't believe him on oath, and I don't want to waste the jury's time taking any more testimony from him." 306 F.2d, at 838.

Language to the same effect was repeated in the charge to the jury:

"Now gentlemen, lest I overlook it, during the trial of this case * * * this court certified into the record in your presence that in the opinion of this court the witness, Dazey, was not to be believed on oath." 306 F.2d, at 838.

Dent and stated that she saw a shiny gun, but also could state only that it was similar to one of those in the courtroom.

In view of the obvious and admittedly inadvertent character of the presence of these weapons, noted as "never recovered" by the District Judge in his charge, and the exclusion of the pistols from the jurors, the argument that Mr. Dent was prejudiced by the presence of the unidentified pistols cannot prevail. Rather to the contrary, the conclusion follows that they presented no factor in the jurors' verdict of guilty.

The cases cited by Mr. Dent to support his contention of prejudice are all based on factual grounds inapposite to those of the instant case, and do not lend the support he claims for them. One of them is Macklin v. United States,[14] in which the court held that reversible error had been committed where the appellant had been charged with carrying a dangerous weapon, and the government introduced into evidence at trial not only the pistol the appellant was charged with carrying, but also three additional guns, allegedly seized from his companions. The government had advanced the theory that the additional weapons, which were displayed in open court and cleared by Marshals in the presence of the jury, were introduced to impeach the appellant's testimony that they had not been seized. The appellant, however, had only testified that he did not see the seizure, and not that it had not occurred. The court held that the doubtful probative value of the guns was outweighed by their prejudicial effect, stating that:

"* * * the Government persisted, over objection and against the judge's doubts, in putting in this evidence as a major part of its case. The display of guns with accompanying testimony did not come before the jury unintentionally or as unimportant. The prosecution labored to support its case by this means. The court cannot in reason hold that the course thus elaborately pursued had no influence on the verdict." [15]

Since the appellant in *Macklin* was charged on a single indictment with unlawful possession of a dangerous weapon, it is clear that any display of guns was highly prejudicial. In the present case, the guns were never placed into evidence nor belabored by the prosecution, which ultimately admitted their inadvertent exposure in open court. The other case relied upon by Mr. Dent is United States v. Reid,[16] in which the court held that the introduction into evidence of a padlock, accompanied by "an inflammatory expression of opinion about the probable use of the lock," [17] constituted prejudicial error in a trial where the defendant was charged with assaulting a correctional officer with his fist. The padlock bore no relation to the crime with which the appellant was charged, and constituted an invitation to the jury "to speculate about other bad acts which the defendant may have committed." [18] No such implication can arise in the instant case.

For the foregoing reasons, the Order of the United States District Court for the Eastern District of Pennsylvania of October 7, 1970, denying the motion of appellant, Reginald Dent, for a new trial and his conviction, will be affirmed.

### Appeal of Eugene Gaines, No. 19,405

As in the case of Mr. Dent, Mr. Gaines also urges that the District Judge erred in refusing his motion for a new trial where the prosecution "put into evidence" two revolvers displayed throughout the trial and having no relationship to the case. Apart from overstating the record in such instances as his assertion

---

14. 133 U.S.App.D.C. 347, 410 F.2d 1046 (1969).

15. *Id.*, 410 F.2d at 1049.

16. 410 F.2d 1223 (7 Cir. 1969).

17. *Id.*, at 1226.

18. *Id.*

that the guns were "put into evidence" and that they "were identified by more than one bank employee as having been used in the robbery," his argument runs along the same line advanced by Mr. Dent. In addition to the cases of Macklin v. United States, *supra*, and United States v. Reid, *supra*, cited by Mr. Dent and heretofore distinguished, he offers Burge v. United States,[19] and United States v. Baker,[20] but on analysis they are found to be inapposite in factual backgrounds and unanalogous to the instant case.

In *Burge*, the court held that the failure of the District Judge to suppress evidence at trial consisting of narcotic accessories which had been seized in violation of the appellant's Fourth Amendment rights constituted reversible error. The court refused to speculate on the extent to which the exhibits might have influenced the jury, and held that the error was not cured when the District Judge later struck the exhibit containing an eyedropper and hypodermic needle from the record and admonished the jury to disregard that evidence. The presence of the pistols in the instant case does not raise an issue of constitutional dimension, which might indicate reversal without regard to an evaluation of the prejudice engendered by their display.[21] In *Baker*, the court held that the admission in evidence of two guns, one of which was identified at trial as that used by the appellant in a hijacking, were properly introduced to prove that the appellant was equipped to commit the offense with which he was charged. The court stated that the guns would have been ruled inadmissible had they been introduced to prove only general bad

character. As in *Baker*, the government in the present case sought to present the pistols originally for their relevance to the offenses charged and not in connection with any allegation of bad character. In fact, the pistols were never admitted into evidence at all.

All that has been stated with reference to Mr. Dent's contention concerning the pistols is applicable here. It leads only to the similar conclusion that the failure of the District Judge to grant Mr. Gaines' similar motion for a new trial based on the presence of the pistols was not error.

■ Mr. Gaines presents two other issues, both relating to allegedly improper identification procedures.[22] First, he challenges as unfair an in-court identification procedure in which he was required to stand up with a scarf around the lower part of his face at the request of the Bank teller, Miss Griffith. Second, Mr. Gaines challenges the procedure of the police in exposing him and three other accused persons at the Bank to its employees and customers immediately upon his apprehension, and in requiring him to place himself in a lineup at the police station on the afternoon of the robbery, where he was viewed by some of the witnesses who were present when the four accused were observed at the Bank. A pretrial motion to suppress the identification was granted insofar as the lineup at the police station was concerned, but denied regarding the showup at the Bank. It is now the contention of Mr. Gaines that the District Court erred in admitting the testimony of Miss Griffith, identifying him in court, because such evidence was tainted as she had observed him in the showup

19. 333 F.2d 210 (9 Cir. 1964), cert. den., 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72 (1965).

20. 419 F.2d 83 (2 Cir. 1969), cert. den., 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970).

21. The pistols in this case had been seized pursuant to search warrants. There can be no reasonable doubt that the presence of the pistols in this case did not prejudice the appellants, fulfilling the command of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

22. Mr. Gaines also argues that he was arrested without probable cause. This argument is without merit. Ample probable cause appeared since, following the robbery, police in the area were alerted to be on the lookout for a young Negro male fitting a description of Mr. Gaines. He was arrested not far from the Bank within one-half hour of the robbery.

at the Bank and at the lineup at the police station.

A brief summary of the testimony involving Mr. Gaines appears desirable at this point. It will be recalled that the alleged robbery was said to have taken place at eleven o'clock on the morning of November 26, 1969. A government witness, Dmytro Komar, an employee at the Robbins Esso Station at Broad and Godfrey Street in Philadelphia, identified a contract for a U–Haul van as having been made by him at about 9:30 to 9:45 of that morning. He stated that the transaction was negotiated by four Negro males, one of whom he identified as Eugene Gaines, who produced a driver's license in his name. He regained possession of the truck four or five days later and he observed marks of a gunshot through the back of it.

Police Officer John W. Moore testified that he was cruising in his car when his radio announced the robbery. Shortly thereafter he recognized the U–Haul van described as involved therein. He followed it to the dead end where it stopped in the driveway of the Trubo Machine Company. There he saw the driver of the van, whom he later identified as Mr. Gaines, flee from the truck toward a wooded area nearby. He arrested the other occupants of the van and found two of the accused armed with shotguns, and the stolen money in the back of the van. A number of other officers arrived on the scene to aid in the apprehension of the three occupants in the back of the van. Officer Moore explained that he saw the occupant of the driver's seat, identified by him as Mr. Gaines, in the act of leaving the van, and ordered him back, whereupon he slid to the rider's side, dismounted and fled. Almost simultaneously, believing himself in danger of the shotgun allegedly in the hand of Mr. Dent and pointed at him, Officer Moore fired one shot from his revolver, which went through the back of the van.

Police Officer James J. Whelan testified that he apprehended Mr. Gaines on Rising Sun Avenue, variously estimated as four or five blocks from the Bank, about fifteen minutes after the robbery was said to have occurred. A highway patrolman, Officer Ralph Ottinger, testified that his radio informed him that the person who had fled the van was wearing a light-colored raincoat, torn at the bottom. Upon a search of the wooded area near the driveway of the Trubo Machine Company, he found a light-colored raincoat ripped at the bottom. An employee of the Trubo Machine Company, Robert Wetzel, testified that he observed a man leave the rider's side of the van, wearing a light-colored raincoat.

It was also shown that at the time of his arrest Mr. Gaines was wearing a white and gold sweater. An expert technician of the Police Department testified that in her opinion, the result of tests of fibers removed from the inside of the raincoat was that they were of similar origin to the fibers of which the sweater was made.

■ It is clear that Mr. Gaines was observed and identified by several of the witnesses in the case. His contention that it was improper to expose him for identification by Miss Griffith with a scarf around his face is without merit. At trial Miss Griffith testified that during the robbery a man wearing a black and white scarf around the lower part of his face appeared next to the counter at which she was working and told her to get down on the floor. She then tentatively identified Mr. Gaines, but stated that a positive identification was difficult because he was partly masked at the time of the robbery. At this point the District Judge acceded to the government's request that a scarf be placed around part of Mr. Gaines' face, whereupon Miss Griffith positively identified him.

Beginning with Holt v. United States,[23] identifications of this type have

---

23. 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

been held proper and not violative of a defendant's Fifth Amendment privilege against self-incrimination. In *Holt*, the Court affirmed the exposure of the defendant modelling a blouse for identification.[24] Nor does the identification to which Mr. Gaines objects constitute a violation of due process as shocking to the conscience or inherently unfair.[25]

Mr. Gaines' final argument, that the showup at the Bank, as well as the lineup at the police station, was improper, and that the in-court identification by Miss Griffith was tainted by her presence at both proceedings, must also fail. Mr. Gaines relies on United States v. Wade [26] and Stovall v. Denno [27] to support his contention that the absence of an attorney at the showup at the Bank violated his right to a fair trial, and that the proceeding was inherently unfair.

In *Wade*, the Supreme Court held that the post-indictment exhibition of the defendant in a lineup without the presence of counsel violated his right to a fair trial, stating that it was necessary to:

"* * * scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial * * *" (Emphasis supplied).[28]

This ruling was based upon the many variable factors in a lineup, such as undue suggestiveness and mistaken or malicious identifications, which a defendant might not be able to later reconstruct for purposes of defense at trial.[29] The Court also stated that:

"No substantial countervailing policy considerations have been advanced against the requirement of the pres-

ence of counsel. Concern is expressed that the requirement will forestall prompt identifications and result in obstruction of the confrontations. As for the first, we note that in the two cases in which the right to counsel is today held to apply, counsel had already been appointed and no argument is made in either case that notice to counsel would have prejudicially delayed the confrontations. Moreover, we leave open the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay. (footnote omitted)." [30]

Commenting on the above statement in Russell v. United States,[31] the court stated that:

"This language leaves room for modification of the *Wade* rule in cases involving prompt confrontations. But it also leaves room for argument that at least 'substitute counsel' would be required in any event. (footnote omitted).

"While the language of *Wade* would thus seem to encompass prompt on-the-scene identifications, they do not fall within the holdings of *Wade* or its companion case, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (footnote omitted). The confrontations disapproved in these cases were post-indictment lineups. Similarly, though it spoke in broad terms, the Court was evidently focusing primarily on the routine lineup and showup procedures employed by the police to obtain evidence for use at trial (footnote omitted). The Court was concerned both to enhance the

---

24. See Simmons v. United States, 390 U.S. 377, 383–384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Wade, 388 U.S. 218, 221–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1961).

25. See Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

26. 388 U.S. 218, 87 S.Ct. 1926 (1967).

27. 388 U.S. 293, 8 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967).

28. 388 U.S., at 227, 87 S.Ct., at 1932.

29. See 388 U.S., at 228–236, 87 S.Ct. 1926.

30. 388 U.S., at 237, 87 S.Ct., at 1937.

31. 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969), cert. den., 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

fairness of such procedures and to expose to judge and jury any elements of unfairness or unreliability which might attend them. In these typical cases, where counsel had been retained and time was not a factor it could find 'no substantial countervailing policy considerations * * * against the requirement of the presence of counsel.' " (footnote omitted).[32]

The court then proceeded to uphold an identification in which the accused was returned to the scene of the crime shortly after committing the offense, and, without the presence of counsel, identified by an eye-witness who subsequently reidentified him in court. The court in *Russell* based its conclusion on the reasoning that:

> "Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' (footnote omitted). This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject. We therefore conclude, with some hesitation, that *Wade* does not require exclusion of McCann's [the witness] identification."[33]

■ This court concludes that the reasoning and principle enunciated in *Russell* constitute a salutary rule of law, and are similarly applicable in the in-

stant case. As previously mentioned, Mr. Gaines was apprehended within one half-hour of the robbery in a vicinity close to the Bank. He was immediately returned to the Bank, and a showup in which his companions were also present was conducted for purposes of identification by eye-witnesses and Bank employees. No allegations of unfair procedures or unduly suggestive methods of identification on the part of the government at that time have been voiced by Mr. Gaines. As the Court noted in *Stovall, supra,* upholding a procedure in which the defendant was taken to a hospital for identification by a woman he had stabbed, one day following his arrest and without affording him time to retain counsel:

> " * * * a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it."[34]

In the circumstances of the present case, the fact that eye-witnesses might have quickly departed, and the considerations of reliability inhering in an immediate identification, or the rapid release of a mistaken suspect, present the "substantial countervailing policy considerations" which justify the action of the government in conducting the showup at the Bank shortly after the robbery in the absence of counsel.

Hence, the argument is not sustained that the in-court identification of Mr. Gaines by Miss Griffith was tainted by her presence at the showup. Neither is the similar argument, based upon her presence at the suppressed police lineup, sustained.[35] It is to be noted that no

---

32. *Id.,* 408 F.2d at 1283. *Cf.* Government of Virgin Islands v. Callwood, 440 F.2d 1206 (3 Cir., 1971).

33. 408 F.2d, at 1284. See United States v. Evans, 141 U.S.App.D.C. 321, 438 F.2d 162, 165 (1971); United States v. Green, 141 U.S.App.D.C. 136, 436 F.2d 290, 291 (1970); United States v. Venere, 416 F.2d 144, 148 (5 Cir. 1969); Rivers v. United States, 400 F.2d 935, 939–941 (5 Cir. 1968).

34. 388 U.S., at 302, 87 S.Ct., at 1972. This reasoning, of course, was framed in light of the Court's conclusion that the *Wade* rule would not apply in the case of *Stovall.* See United States ex rel. Springle v. Follette, 435 F.2d 1380, 1382 (2 Cir. 1970), cert. den., 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331 (1971).

35. Reference to the suppressed lineup at the police station was first introduced on cross-examination of Mrs. DeGirolamo by counsel for Reginald Dent, and later on cross-examination by counsel for Mr. Gaines.

positive identification of Mr. Gaines was made either at the showup or at the line-up at the police station. Miss Griffith made her only positive identification at trial from the independent source of her recollection of him at the robbery. Nothing in the record would lead to a belief that this identification was in any way dependent upon her presence at the police station lineup. For these reasons Mr. Gaines' final contention must fail.

The order of the District Court for the Eastern District of Pennsylvania of October 7, 1970, denying the motion of appellant, Eugene Gaines, for a new trial and his conviction, will be affirmed.