**UNITED STATES of America**

v.

**Samuel Alexander FOSTER, Jr.**

**Crim. No. 70–615.**

United States District Court,
E. D. Pennsylvania.

Feb. 1, 1972.

Louis C. Bechtle, U. S. Atty., Robert N. deLuca, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John Rogers Carroll, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Defendant seeks to suppress (1) confessions given to the F.B.I. and the Philadelphia Police and (2) an out-of-court identification. Hearings were held in these matters on April 30, 1971 and August 26, 1971.

On August 26, 1970 at or about 9:40 a. m., a robbery took place in the Community Federal Savings and Loan Association, 3628 N. Broad Street, Philadelphia, Pa. The robber made his escape south on Broad Street in a Yellow cab. Two Philadelphia policemen, having heard the description of the robber and the taxicab over their radios, halted the cab in which the defendant was riding. The defendant jumped from the cab and was pursued by the police for several blocks. During the course of the chase, the defendant was shot in the arm. He was taken to Temple University Medical Center.

Mrs. Flythe, a teller at the bank, who was working there at the time of the robbery, furnished a description of the robber minutes after the robbery. The police informed her immediately after the defendant was shot that a suspect had been shot, and she was taken by an officer to Temple University Medical Center for a possible identification.[1] She actually arrived at the hospital before the defendant, and saw him as he was brought in for treatment by two policemen. Mrs. Flythe identified Mr. Foster as the robber. This confrontation took place approximately a half hour after the robbery.

After his wound was dressed, defendant was taken to the Police Administration Building for questioning at or about 11:00 a. m. He was advised of his rights by a Philadelphia detective and by an FBI agent. The defendant stated that he wished to waive his rights, and he signed a formal waiver presented to him. The defendant then made a complete confession concerning the robbery to the FBI agent and made a similar statement to the Philadelphia police later that afternoon.

## THE CONFESSIONS

Defendant seeks to suppress both confessions on the ground that the waiver and confessions were not voluntary. Defendant claims that he was in pain as a result of the gunshot wound when he arrived at the Police Administration Building and that he asked to return to the hospital. Defendant claims that he was told that he would be taken to the hospital only after he was questioned and that "things would go easier for him" if he cooperated. The defendant also testified that he asked to see a lawyer and was told a lawyer was on his way to see him. Defendant claims that he signed the waiver and made the statement only in order to get back to the hospital.

Both the detective and the FBI agent denied that any promises or threats were made concerning return to the hospital. The FBI agent testified that the defendant was "nervous and rational" when the interview began and did not complain of any pain. About midway through the questioning, the defendant first complained of. pain but did not ask that the interview be terminated or that he be taken to the hospital. The agent testified that he did not observe any change in the defendant's responses or demeanor. On the agent's own initiative, the defendant was taken back to the hospital at or about 12:30 p. m.

---

1. Mrs. Flythe's testimony was unclear concerning the language used by the policeman in telling her that a suspect had been shot. She testified at the hearings involved here that she thought he said a man had been shot and that the police wanted to know if she could identify him as being the robber. At a magistrate's hearing on October 26, 1970, she had testified, however, that the policeman said that the man who held her up had been shot. She indicated that she was unsure which version was correct. The latter is clearly more suggestive, but we rely on neither in reaching our decision concerning the admissibility of this identification.

where he received an injection for pain. He was then returned to the Police Administration Building for further questioning at or about 1:15 p. m. Both agents also testified that defendant never asked to see a lawyer and that they did not tell him a lawyer was coming to see him.

■ The first issue we must resolve is whether the defendant's physical condition was such that the statements he made were not freely given or the product of a rational mind. The Second Circuit has rejected the theory that "a serious gunshot wound must be presumed to render its victim incapable of exercising free volition and making rational choices." United States ex rel. Cronan v. Mancusi, 444 F.2d 51, 54 (C.A. 2, 1971). The defendant presented no evidence concerning the nature of his wound or possible side effects. We are persuaded that the defendant was not seriously wounded by the fact that Temple Medical Center released the defendant so shortly after he was shot and treated. Moreover, the testimony of those present at the questioning indicates that the defendant was alert, responsive and intelligent. We therefore conclude that the defendant's gunshot wound did not render him incapable of exercising free volition or making rational choices.

■■ We must next consider whether the waiver and confession were "the product of compulsion, subtle or otherwise." Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). If a statement is taken without an attorney being present after the Miranda warnings have been given, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Id., at 475, 86 S.Ct. at 1628. We find that the government has met this burden. We believe that the rapid sequence of events between the robbery and shooting and the confession supports the testimony of the police officers that both the waiver and confession were freely given.

The robbery occurred at or about 9:40 a. m. and within one and one-half hours, the defendant had been pursued and shot by the police, taken to the hospital and treated, and brought to police headquarters. He claims that he was in pain when he arrived at police headquarters and that he asked to return to the hospital. However, there is no evidence that immediately before his arrival he complained of pain to the medical attendants at the hospital or requested to remain there for further treatment. There is uncontradicted testimony that the defendant signed the waiver forms at 11:24 a. m. We find it difficult to believe that an individual just released from a hospital would be in such great pain that within the span of twenty-four minutes the police could coerce him into waiving his rights by threatening to withhold medical treatment. We find as a fact that the defendant did not complain of pain in his arm when he arrived at police headquarters or ask to see a lawyer, and the police did not make any threats or promises to the defendant to induce or coerce him to waive his rights or confess. Furthermore, we find that although the defendant did complain about pain at some point during the interrogation, he did not request or indicate in any other manner that the interview be terminated. We have noted that the fact that the defendant was in some pain when he confessed is not sufficient evidence in itself to render the confession involuntary. We conclude that the defendant knowingly and intelligently waived his rights, including his right to counsel, and that the confession given in the morning was voluntary.

Having found that the first confession was voluntary, we need not consider defendant's further argument that the second confession is invalid as being the product of the first. We therefore deny defendant's motion to suppress both confessions.

## THE IDENTIFICATION

United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), expressly held that the post-indictment exhibition of a defendant in a lineup to a witness without the presence of his lawyer was a violation of his right to counsel under the Sixth Amendment. This lineup confrontation was viewed as a critical stage to which the right of counsel attaches. Wade, however, was not directed only to post-indictment line-ups.

"The pretrial confrontation for purpose of identification may take the form of a lineup, also known as an 'identification parade' or 'showup', as in the present case, or presentation of the suspect alone to the witness, as in Stovall v. Denno, [388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199], supra. It is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eye-witness identification."

Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967), decided the same day as Wade, left no doubt that the rule announced there was not limited to formal lineups. In that case the suspect was taken to a hospital before arraignment for possible identification by the victim of an assault who was very seriously injured. In Stovall, the Court decided not to apply the Wade rule retroactively. However, it was indicated that the Wade rule may well have governed the confrontation involved in Stovall were it not for the retroactivity question. A confrontation for identification "is a 'critical stage', and * * * counsel is required at all confrontations." Stovall, *supra*, 388 U. S. at 298, 87 S.Ct. at 1971. One-to-one confrontations are not to be preferred over lineups. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Stovall, *supra*, 388 U.S. at 302, 87 S.Ct. at 1972.

This Circuit has held that the Wade guarantee to right of counsel at lineups applies "equally to photographic identifications conducted after the defendant is in custody." United States v. Zeiler, 427 F.2d 1305, 1307 (C.A. 3, 1970). Though Zeiler involved a photographic identification conducted days after the defendant's arrest, the court indicated that for Wade purposes, arrest was the significant event. "[W]hen as in the present case, the investigation has resulted in the arrest of an accused, the right to counsel attaches." Zeiler, *supra*, 427 F.2d at 1307 (footnote 3).

Since Zeiler, the Court of Appeals here has created a narrow exception to the Wade requirement in a post-arrest situation. In United States v. Gaines, 450 F.2d 186 (C.A. 3, 1971), it held that a defendant's rights were not violated when, after being apprehended within a half-hour of a bank robbery in a vicinity close to the bank, he was returned there without counsel for a showup for purposes of identification by eyewitnesses and bank employees. "In the circumstances of the present case, the fact that eye-witnesses might have quickly departed, and the considerations of reliability inhering in an immediate identification, or the rapid release of a mistaken suspect, present the 'substantial countervailing policy considerations' which justify the action of the government * * *." Gaines, *supra*, 450 F.2d at 197.

The cases allowing such an exception to the Wade rule "have generally limited the circumstances both to a location at the scene of the crime and to a period of time within minutes of the crime." Government of Virgin Islands v. Callwood, 440 F.2d 1206 (C.A. 3, 1971). In Callwood, the court concluded that showing a suspect singly to a witness at a police station two hours after the crime violated his right to counsel. Wade was applicable because the circumstances did not make immediate identification imperative.

In this case, while the confrontation-identification was only a half-hour after the crime was committed, it took place not at the scene of the crime, but at a hospital where the defendant had been taken wounded. While an immediate identification often helps insure reliability, the suggestive circumstances involved here outweigh any value of immediacy. Besides being presented singly to the witness, the fact that the defendant had been shot by the police could hardly fail to influence the witness in making a determination of whether the defendant was indeed the robber. It is not normal police treatment of a suspect to a crime to shoot him. It is obvious that the police would not have shot the defendant if they did not feel reasonably certain of his guilt.[2] Unlike the situation presented in Gaines with an on-the-scene identification, here the confrontation was not necessary because of a valid concern that eyewitnesses might have quickly departed. Nor could the confrontation here promote the worthy goal of the rapid release of mistaken suspects. *Cf.* United States v. Barnes, 336 F.Supp. 537 (E.D.Pa., 1972). Therefore, this hospital identification must be suppressed because no absolute necessity for such an immediate confrontation has been shown as would justify an exception to the Wade requirement of counsel being present. Rivers v. United States, 400 F.2d 935 (C.A. 5, 1968); Commonwealth v. Hall, 217 Pa.Super. 218, 269 A.2d 352 (1970).

We do not decide now whether an in-court identification by Mrs. Flythe would be admissible despite the suppression of her out-of-court hospital identification. It will be admissible only if the government can establish by clear and convincing evidence that it has an origin independent of the hospital identification made without the presence of counsel. Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Zeiler, 447 F.2d 993 (C.A. 3, 1971).

---

2. The situation here is to be contrasted with that in *Gaines*, where "no allegations of unfair procedures or unduly suggestive methods of identification" had been made. *Gaines, supra*, 450 F.2d at 197.