**UNITED STATES of America**

v.

**Gary BOATWRIGHT.**

**Crim. No. 76–73.**

United States District Court,
E. D. Pennsylvania.

Jan. 21, 1977.

748

Kenneth Dixon, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Dennis H. Eisman, Philadelphia, Pa., for defendant.

## MEMORANDUM

FOGEL, District Judge.

Gary Boatwright was indicted for bank robbery and conspiracy, based upon his alleged participation in a robbery of the branch of the Central Penn National Bank located at Malvern and Lancaster Avenues, Philadelphia, Pennsylvania, on January 16, 1976. Along with his co-defendants, Franklin James Carey and Mack Clark, Jr., Boatwright was charged with four counts of bank robbery, 18 U.S.C. §§ 2113(a), (b), (d), and one count of conspiracy, 18 U.S.C. § 371. Boatwright and one of the co-defendants, Clark, were tried together before a jury, which found each of them guilty on all five counts; Carey, the other co-defendant, who had previously pleaded guilty to all five counts, appeared as a witness for the prosecution against them.

Boatwright filed no pretrial motions, prior to the commencement of his trial on June 23, 1976; nor did he file any post-trial motions after the verdict was taken on July 2, 1976, even though we granted an extension of time until July 19, 1976, for filing post-trial motions. Sentencing was scheduled for October 8, 1976; we ordered the Probation Department to conduct a pre-sentence investigation and to prepare a presentence report in advance of that date. After a review of the report, which was made available to counsel for defendant, and of the matters elicited at that hearing, we sentenced Boatwright, under the provisions of the Youth Corrections Act, 18 U.S.C. §§ 5010(b), 5017(c). No motion for reduction of sentence has been filed. However, Boatwright did file a Notice of Appeal, on October 18, 1976; that appeal is now pending before the United States Court of Appeals for the Third Circuit. Because no post-trial motions were filed with us, no prior opinion has issued in this case. Accordingly, at this juncture, for the benefit of the Court of Appeals, we will review certain rulings which we made from the bench during the course of the trial, rulings that in whole or in part may serve as a basis for the appeal.

## I. Summary of Bench Rulings

With nothing concrete before us as to the basis for the appeal, we will review five bench rulings which are the only ones which can conceivably be the grounds for Mr. Boatwright's appeal; for the reasons to be outlined, three of them, which apply solely to Clark, not only lack merit, but involve matters which Boatwright has no standing to raise; the other two claims which can be made on Boatwright's behalf also are lacking in merit. The rulings are as follows: (1) permission to the government on re-direct examination of Franklin Carey to elicit testimony over objection of defendant Clark's attorney, that Carey had no record of prior arrests; (2) the grant of the government's request that defendant Clark be required to put on a wig, Government's Exhibit G-1, for purposes of identification by a bank teller, over objections voiced by both defense counsel; (3) our denial of defendant Boatwright's Motion for Judgment of Acquittal, submitted pursuant to F.R. Crim.P. 29(a) at the close of the government's case-in-chief; (4) our refusal to permit defendant Clark to call two alibi witnesses, for failure to provide the government with the notice of alibi required by F.R.Crim.P. 12.1; and (5) our refusal to give the jury an instruction concerning expert witnesses, which counsel for defendant Boatwright had submitted.

We emphasize, again, that neither defendant sought post-trial relief, with respect to any of the enumerated bench rulings, nor with respect to any other matter. However, in the event that any or all of these rulings may form the basis for the appeal, we believe it to be useful to state the reasons for our decision as to each issue.

## II. Discussion of Rulings (1), (3), (4) and (5)

*(1) Lack of prior arrests.* During re-direct examination of Franklin Carey, the government's principal witness, counsel for the government attempted to elicit testimony with respect to Carey's lack of prior arrests. Although counsel for defendant Clark objected, we overruled the objection and permitted the testimony, on the basis that counsel for Clark and counsel for Boatwright had both engaged in "the most vigorous attempt to bring the character and credibility into question." (NT 3:5) Carey, an original co-defendant who had pleaded guilty to the indictment, had, during the course of a lengthy direct examination, identified both Clark and Boatwright as participants in the bank robbery, and had testified extensively as to their involvement in the planning and execution of the robbery. During cross-examination, both defense counsel assailed Carey's character and credibility at great length (*see,* NT 2:63–126). Carey was cross-examined as to his own mental stability, his emotional problems, his behavior during a brief stint in the Army, and his motive for participating in the bank robbery; he was questioned as to the substance of his plea bargain with the government, as well as to his motive for cooperating with the government, by serving as a prosecution witness. In addition, questions by defense counsel suggested that Carey had some involvement with drugs, including possibly illegal drug involvement (NT 2:86), and that Carey had prior experience in robbery, generally, and possibly bank robbery in particular (NT 2:90–91).

In light of such broad and far-ranging attacks upon Carey's character and credibility, we again reaffirm our prior ruling, in upholding the admission of Carey's testimony as to the lack of prior arrests; such testimony was, as we stated at the time, "the most appropriate redirect examination [we] have ever heard." That testimony was clearly admissible; the scope of redirect examination is within the sound discretion of the trial court. *See U.S. v. Hodges,* 480 F.2d 229, 233 (10th Cir. 1973); and *Chapman v. U.S.,* 346 F.2d 383 (9th Cir. 1965), cert. denied, 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965).

*(3) Motion for Judgment of Acquittal.* At the close of the government's case, counsel for defendant Boatwright made his Motion for Judgment of Acquittal, pursuant to F.R.Crim.P. 29(a); we denied the motion then; again, it should be noted

that this motion was not renewed after the guilty verdict was returned. A motion for judgment of acquittal raises the question of the sufficiency of all of the evidence to permit the jury to find the defendant guilty beyond a reasonable doubt; F.R.Crim.P. 29(a) permits entry of the judgment of acquittal *only* if the evidence is *insufficient* to sustain a conviction. *See, U.S. v. Morris,* 308 F.Supp. 1348, 1351 (E.D.Pa.1970). In disposing of such a motion, we must view the evidence in a light most favorable to the government; it is not for the trial judge to assess the credibility of witnesses, nor to weigh the evidence, nor to draw inferences of fact from the evidence. *U.S. v. Gross,* 375 F.Supp. 971, 973 (D.C.N.J. 1974), aff'd, 511 F.2d 910 (3d Cir. 1975), cert. denied 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249; and *U.S. v. Morris, supra. See also, U.S. v. Allard,* 240 F.2d 840 (3d Cir. 1957), cert. denied 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761.

■ With these standards in mind, we reaffirm the basis for that ruling, on the ground that the trial record clearly called for denial of the motion; the testimony of Carey, and of the numerous other government witnesses, justified submission of the case to the jury. Defense Counsel's vigorous attack on the credibility of those witnesses, raised questions which were to be weighed and evaluated solely by the jury in arriving at its verdict.

*(4) Exclusion of alibi testimony.* One of the defendants, Clark, attempted to offer the testimony of two alibi witnesses; the government objected, on the basis of the defendant's failure to comply with the notice of alibi provisions set forth in F.R. Crim.P. 12.1; we sustained that objection. We reaffirm the propriety of that ruling.

■ Initially, we seriously question the standing of Boatwright to complain about the ruling since the putative alibi testimony would have been on defendant Clark's behalf; we cannot see how it bears on Boatwright's conviction. Any claim by Boatwright of a denial of his right to a fair trial, or of due process, based upon exclusion of certain testimony offered by his co-defend-

ant, Clark on his own behalf only—testimony which has never been alleged to be relevant to Boatwright's guilt or innocence—cannot seriously be entertained. Indeed, it is significant that Boatwright and his counsel expressed their disinterest by their absence when we conducted the hearing out of the jury's presence before ruling on the alibi issue; they voluntarily withdrew during the conduct of that part of the proceeding. (N.T. 5:91)

■ Moreover, under the notice of alibi provisions contained in the Federal Rules of Criminal Procedure, a defendant must, upon written demand of the government attorney, serve a written notice of his intention to offer a defense of alibi; the defendant's notice must be served within ten days, absent court direction to the contrary, and must include, *inter alia,* "the names and addresses of the witnesses upon whom he intends to rely to establish such alibi." F.R.Crim.P. 12.1(a). Subsection (b) of the same Rule places the defendant under a continuing duty to disclose, and Subsection (d) sets forth the sanctions which the trial court may impose for failure to comply:

> *(d) Failure to comply.* Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.

The trial court is also authorized, pursuant to Subsection (e) of the Rule, to grant an exception to any of the requirements of the preceding subdivisions of the Rule, "for good cause shown."

Although the trial had commenced on June 23, 1976, it was not until June 28, 1976, that the government, and the Court, first learned that defendant Clark proposed to offer the testimony of two alleged alibi witnesses, one Alexander Davis and one Stafford Easterling; indeed, it was not until that date that defendant Clark even

informed his *own counsel* of the existence of these two putative alibi witnesses (NT 5:91; 5:66). Our inquiry at the time disclosed that the government, on April 12, 1976, had served the defendant with the appropriate written demand contemplated by F.R.Crim.P. 12.1, but that neither defendant Clark nor his counsel had given the government any responsive notice of an intention to offer an alibi defense; our inquiry also disclosed that Clark's counsel had in fact made an appropriate inquiry of his client, concerning the existence of alibi witnesses, but that Clark had failed to alert his counsel to the existence of such witnesses. We offered defendant Clark an opportunity to take the stand, for the limited purpose of giving testimony in connection with our ruling on the admissibility of alibi testimony at this late date.

Clark willingly took the stand, and, after appropriate explanation of his Fifth Amendment rights, was questioned extensively by the Court, on this subject only (NT 5:93–111); this entire proceeding, of course, took place out of the presence of the jury. Clark's testimony revealed the following: (1) as to the proposed witness Davis, Clark had been aware of the existence of this witness since the time of Clark's arrest; but had never even asked Davis to serve as an alibi witness, until the weekend of June 26, 1976; (2) as to the proposed witness Easterling, Clark had known of the existence of this witness since the time of the bank robbery, yet had not requested that he serve as an alibi witness, until June 25, 1976; (3) Clark's counsel had, indeed, made an appropriate inquiry as to the existence of alibi witnesses; (4) Clark apparently felt that he did not want to involve the two witnesses, yet he did not even inform his counsel that there were two possible witnesses whom Clark preferred not to call; (5) Clark had been released on bail in early May, 1976; (6) Clark had had numerous contacts with the two proposed witnesses, and he knew their whereabouts; and (7) Clark had failed to mention these witnesses to his counsel until June 28, 1976, (at which time Clark's counsel promptly brought the matter to the attention of the government attorney and the Court).

■ Upon the basis of all the foregoing facts, we sustained the government's objection, and declined to permit the alibi witnesses to testify. We stated at the time that, while we would not automatically rigidly enforce the ten-day provision of F.R. Crim.P. 12.1(a), under all of the circumstances before us, exclusion of the testimony was the proper course. (NT 5:109–110). Having now reviewed the trial record, we remain firm in our conviction that defendant Clark did not show sufficient "good cause" to warrant our granting an exception to the provisions of Rule 12.1, and we feel that application of the sanction of exclusion, as authorized by Subsection (d) of the Rule, was appropriate. *Cf., U.S. v. Smith,* 173 U.S.App.D.C. 314, 524 F.2d 1288 (1975). Hence, even under the most attenuated theory, Boatwright (who has never claimed that the testimony to be given by Clark's two putative alibi witnesses would in any way be relevant to Boatwright's own guilt or innocence), if permitted to stand in Clark's shoes would be barred by the same factors that led to our ruling against Clark in the midst of the actual trial of the matter, the time when Clark first raised the issue.

■ *(5) Refusal to charge on expert testimony.* Defendant Boatwright submitted numerous points for charge, among which was a requested instruction concerning the weight to be given to expert testimony. Counsel for the government objected to defendant's proposed point for charge on that score, and we sustained the objection. While Boatwright's counsel argued that one of the prosecution witnesses had testified to being a firearms "expert", it was clear from the record that the government had made no effort to qualify that witness as an expert, and that the government did not in fact contend that the witness was an expert. Confronted with this situation, we declined to charge the jury as requested by defendant Boatwright (NT 6:39–41). However, we stated at the time that the defendant would be permitted to submit a revised

point for charge on the subject, if he so chose, and that any such revised point would receive our consideration. No revised point was submitted on this issue, nor, when we permitted all counsel to review the complete charge prior to our delivering it to the jury, was any objection raised as to the absence of such a point for charge (NT 7:3). Accordingly, we now reaffirm our prior ruling, that defendant's Point 6, of his Proposed Points for Charge, was properly denied by us.

*III. Discussion of Our Ruling that the Codefendant, Clark, Put on a Wig for Identification Purposes.*

During the presentation of its case-in-chief, the government called Sheila Person as a witness; she was identified as a teller at the Central Penn National Bank, during the time of the alleged robbery, and she was called for the purpose, *inter alia*, of identifying the co-defendant, Clark, as one of the bank robbers. She testified that one of the robbers had been wearing a wig, similar to Exhibit # G-1, and dark sunglasses; she then identified the co-defendant, Clark, as that individual, stating: "I believe it's him. If he had on the wig I could make a definite statement that he was. I mean, I'm quite sure that it was him." (NT 3:141–142). At that point, counsel for the government requested that the Court instruct Clark to put the wig on, and defense counsel objected; more specifically, counsel for defendant Boatwright requested, that any such identification be accomplished by our having "five men of equal description to Mr. Clark stand up with five wigs and five pairs of sunglasses and have her pick out the right man." (NT 3:145) After discussion at side bar, we informed counsel that, pursuant to the decisions in *U.S. v. Gaines,* 450 F.2d 186 (3d Cir. 1971), cert. denied, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 801 (1972), and *U.S. v. Getz,* 381 F.Supp. 43 (E.D.Pa.1974), aff'd without opinion, 510 F.2d 971 (3d Cir. 1975), cert. denied, 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1975), we would permit the government to have Clark don the wig for purposes of identification; however, and

purely as a matter of discretion, since we had no obligation in this connection, we stated to both defense counsel that, if they wanted to cross-examine the witness by means of a "line-up" of five similar men, the following day, we would also permit such cross-examination. (NT 3:143–144).

Defendant Clark then placed the wig on his head, and the witness identified him as the person she saw in the bank on the day of the robbery; when asked if she had any doubt about the identification, she responded in the negative. (NT 3:145–148). Subsequently, defense counsel made no attempt to arrange the type of "line-up" which had been discussed at side bar. The record also reveals that Clark was again asked to put on the wig, for purposes of identification by another bank teller, Sheila Grant; she had tentatively identified him, no objection was raised to the request that he put on the wig this second time, and, upon viewing the defendant Clark with the wig on, this second witness testified that he "looks like" the bank robber whom she had seen at the time of the robbery. (NT 4:43–44).

Initially, we question defendant Boatwright's standing to challenge our ruling that Clark should put on the wig, and would reject that contention on the same basis we reject his standing to raise the issue of our refusal to permit Clark to put on his alleged alibi witnesses. Even if we were to consider his claim, he would stand in Clark's shoes and we are satisfied that the instruction to Clark, to put on the wig, was proper under the controlling decision in this Circuit.

*U.S. v. Gaines, supra,* presented the issue to the Court of Appeals for this Circuit, of the propriety of a trial judge permitting the government to place a scarf over part of a defendant's face, for purposes of in-court identification by a bank teller witness. The witness had testified that, during the robbery, a man wearing a scarf about a portion of his face appeared next to the counter at which she was working; she had tentatively identified the defendant as that man, but had stated that a positive identification was difficult because he was partly masked at

the time of the robbery. The government asked that he be masked in the fashion testified to; the trial court granted the request. The witness then positively identified the defendant as the robber she had seen at the bank. In upholding the identification, the Court stated that "identifications of this type" neither violate a defendant's Fifth Amendment privilege, nor his due process rights. The continuing vitality of the *Gaines* rule is evidenced by its recent citation with approval in *U.S. v. Getz, supra,* in which the Court stated, in dictum, that: "even assuming that the government did require defendants to dress in clothing which was worn during the bank robbery, this would have been permissible in order to facilitate identification." *Id.,* at 45.

■ Upon review of the record before us, we remain convinced that the instant case fits squarely into the *Gaines* mold; accordingly, again we reaffirm our ruling on that score. We hold that neither Clark nor Boatwright could have been prejudiced by the admission of the testimony elicited through the use of perfectly proper and approved procedures.

*IV. Conclusion.*

Throughout this trial, counsel for Boatwright, an experienced practitioner in criminal defense matters in this Court, meticulously raised those issues and points which could be raised in his client's defense. Notwithstanding his zealous and skillful representation, the jury concluded that Boatwright was guilty. Even in the absence of post-trial motions, from our review of the record, we are satisfied that Boatwright received a fair trial and that the verdict was amply supported by the evidence.